**The STATE SECURITIES COMPANY, a corporation, Appellant,**

v.

**AVIATION ENTERPRISES, INC., a corporation, H. F. Jones, and Owens Metal Company, a corporation, Appellees.**

No. 8082.

United States Court of Appeals
Tenth Circuit.

Jan. 7, 1966.

---

3. "I don't know whether he—where he intended to go. I don't know, but maybe he does. He hasn't said, but maybe he does know."

Herman Ginsburg, Lincoln, Neb. (Charles L. Davis, Jr., Topeka, Kan., was on the brief), for appellant.

Byron J. Beck, Kansas City, Mo. (Morrison, Hecker, Cozad & Morrison, Donald B. Steele, Kansas City, Mo., Garlinghouse, Shaw, Hergenreter & Quarnstrom and Warren Shaw, Topeka, Kan., were on the brief), for appellees.

Before PHILLIPS, BREITENSTEIN and SETH, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

The State Securities Company, hereinafter referred to as Securities, commenced this action against Owens Metal Company, hereinafter referred to as Owens, and others, seeking a decree adjudging a chattel mortgage held by Securities to be a first lien upon a certain Mooney airplane, ordering the foreclosure of such mortgage, and directing the sale of such airplane to satisfy a debt owing to Securities, secured by such mortgage, and other equitable relief. Owens counterclaimed, praying for a determination that Securities had no valid lien on the airplane and for an order that Securities deliver to Owens a certain bill of sale for such airplane, which Owens needed in order to register the airplane in its name with the Federal Aviation Agency. Trial was to the court and at the conclusion thereof judgment was given for Owens and against Securities, both on the complaint and the counterclaim. Securities has appealed.

A written stipulation and the evidence adduced at the trial below established the following facts:

Securities is an industrial loan company and engages extensively in the financing of airplane purchases. Its offices are in Lincoln, Nebraska. During 1960, Securities made a number of loans to Mike Mulcahey, Inc., hereinafter referred to as Mulcahey, Inc., each secured by a chattel mortgage on an airplane. This action involves one of such loans and mortgages, executed on September 1, 1960.

During 1960, Mulcahey, Inc., was a duly franchised distributor and retail seller of Mooney aircraft in Kansas City, Missouri, and held a dealer's aircraft registration certificate issued by the Federal Aviation Agency. At all times here material, Securities knew those facts. When Mulcahey, Inc., wished to purchase a Mooney aircraft from the factory, to be offered for sale and sold by it at retail in the ordinary course of

business at its place of business in Kansas City, Missouri, and was without sufficient funds to pay for it, it was the custom for the president of Mulcahey, Inc., to consummate a loan from Securities in the following manner: He would fly the aircraft to the airport at Lincoln, where he would be met by an employee of Securities, who would confirm that the serial numbers and registration numbers of the aircraft were the same as those shown on the factory bill of sale to Mulcahey, Inc. The president of Mulcahey, Inc., would then go to the office of Securities, where he would execute a 90-day promissory note and a chattel mortgage on the aircraft and deliver them and such bill of sale to Securities and receive the amount of the loan from Securities. The bill of sale was delivered to Securities, so it could register the mortgage with the Federal Aviation Agency. However, Securities failed so to register a number of its chattel mortgages on aircraft. Sometimes the note would be paid off by Mulcahey, Inc., in 90 days and sometimes it would be renewed.

When making such loans, Securities knew that it was the intention of Mulcahey, Inc., to sell the mortgaged aircraft to a third person. In some instances, Mulcahey, Inc., transferred to Securities the retail financing paper taken by Mulcahey, Inc., on the sale to a retail purchaser of an aircraft in liquidation of a chattel mortgage thereon held by Securities. Securities knew that Mulcahey, Inc., would satisfy each of its several loans, secured by an aircraft mortgage, from the proceeds of the sale of the mortgaged aircraft or by the transfer to Securities of the retail financing paper received on the sale of such aircraft and Securities impliedly agreed that Mulcahey, Inc., would satisfy its loans from Securities in that manner.

When Mulcahey, Inc., negotiated the retail sale of an aircraft upon which Securities held a mortgage, it would either pay off the 90-day note by check or would forward the retail financing paper to Securities. Securities would then release the mortgage securing the 90-day note executed by Mulcahey, Inc.

Securities did not inquire and was not advised whether Mulcahey, Inc., had a prospective customer for a particular plane when it took a mortgage thereon to secure a loan.

During 1960, Securities made the following loans to Mulcahey, Inc., in the manner described above, in addition to the loan involved in this action:

| March 17, 1960 | $12,130.00 |
| May 2, 1960 | 15,975.00 |
| May 13, 1960 | 12,822.53 |
| July 5, 1960 | 14,148.34 |
| July 5, 1960 | 12,417.98 |
| August 2, 1960 | 12,510.75 |
| September 7, 1960 | 12,519.18 |
| October 17, 1960 | 12,577.19 |
| November 4, 1960 | 12,761.13 |

On August 8, 1960, Owens executed a purchase order for a Mooney Mark 20A aircraft to Mulcahey, Inc., and paid to Mulcahey, Inc., a $500 down payment. The purchase order showed a total purchase price of $19,197 and indicated that a trade-in allowance of $11,197 would be allowed on a 1958 Mooney aircraft, leaving a balance due of $8,000.

On August 27, 1960, Mooney Aircraft, Inc., the manufacturer of Mooney aircraft, sold and delivered to Mulcahey, Inc., the airplane involved in this action, being a Mooney Mark 20A aircraft, Serial Number 1636, Registration Number N-6045X, hereinafter referred to as the Owens aircraft, and executed and delivered its bill of sale conveying the aircraft to Mulcahey, Inc. Such bill of sale was not recorded in the office of the Federal Aviation Agency prior to the bringing of the instant action.

On September 1, 1960, the president of Mulcahey, Inc., flew the Owens aircraft to Lincoln, where the serial numbers and registration numbers were checked by an employee of Securities to confirm that they corresponded with the numbers in the factory bill of sale. The president of Mulcahey, Inc., then executed on behalf of the corporation a 90-day promissory note in the amount of

$13,321.46, and a chattel mortgage on the Owens aircraft to Securities, to secure the note, and delivered them and the bill of sale to Securities. Mulcahey, Inc., then received from Securities the amount of the loan, $13,321.46. Securities knew that Mulcahey, Inc., would fly such aircraft to its retail salesroom in Kansas City, Missouri, and that it was and would be there domiciled. Securities never recorded the chattel mortgage here involved with the Federal Aviation Agency. Securities contemplated that Mulcahey, Inc., would offer for sale and sell such Owens aircraft to a retail buyer in the ordinary course of business at its retail show room in Kansas City, Missouri. There was no proof that Mulcahey, Inc., was not to consummate a sale of the aircraft until the mortgage loan was paid and the mortgage released. On the contrary, there was proof that it was normal procedure for Mulcahey, Inc., to repay the loan after the aircraft had been sold to a retail purchaser and the purchase price paid by such purchaser.

On September 14, 1960, Owens transferred to Mulcahey, Inc., the 1958 Mooney aircraft as a part of the purchase price of the Owens aircraft and paid the balance of the purchase price to Mulcahey, Inc. On the same day, Mulcahey, Inc., executed and delivered to Owens a bill of sale transferring title of the Owens aircraft from it to Owens and delivered possession of such aircraft to Owens. Mulcahey, Inc., did not remit the proceeds of such sale to Securities in payment of its loan on such aircraft and has not paid such loan.

Owens had no knowledge, actual or constructive, of the mortgage on the Owens aircraft held by Securities, or notice of any facts that would put it on inquiry. Mike Mulcahey, representing Mulcahey, Inc., told Owens it was being given all the necessary title papers. Owens mailed its bill of sale from Mulcahey, Inc., and an application for a certificate of registration for the Owens aircraft to the Federal Aviation Agency and those documents were received by it on September 19, 1960. It refused to record the bill of sale or issue a certificate of registration in the name of Owens, because the bill of sale from Mooney Aircraft, Inc., to Mulcahey, Inc., was not of record in its office.

During the period of August 27, 1960, through September 20, 1960, the records of the Federal Aviation Agency showed that the registration number of the Owens aircraft was one assigned to Mooney Aircraft, Inc. They did not show such aircraft to be registered in the name of any owner nor reflect any lien or encumbrance on such aircraft.

The holder of a dealer's aircraft registration certificate under Part 502 of the Regulations promulgated by the Administrator of the Federal Aviation Agency under 49 U.S.C.A. § 1405 could operate any aircraft purchased by it in the ordinary trade channels and for demonstration purposes without registering the ownership of said aircraft in its own name with the Federal Aviation Agency.

When Mulcahey, Inc., failed to pay the note herein involved at its maturity, December 1, 1960, Securities caused a title search to be made and learned that Mulcahey, Inc., had sold the Owens aircraft to Owens. Thereafter, Securities commenced this action.

The trial court found the facts substantially as above stated and concluded that Securities impliedly authorized and consented to the sale of the Owens aircraft by Mulcahey, Inc., in the regular course of business; that Securities authorized Mulcahey, Inc., to pay off its note from the proceeds of the sale, after the sale and delivery of possession to Owens; that Owens purchased the Owens aircraft from Mulcahey, Inc., for valuable consideration without notice of Securities' chattel mortgage, under the justifiable belief that Mulcahey, Inc., had the right to sell the Owens aircraft; that Securities waived the lien of its chattel mortgage; that the Owens aircraft was free of any lien or encumbrance when sold; and that Securities by its conduct is estopped from asserting the lien of its chattel mortgage against Owens.

49 U.S.C.A. § 1403 provides in material part as follows:

"(a) The Administrator shall establish and maintain a system for the recording of each and all of the following:

"(1) Any conveyance which affects the title to, or any interest in, any civil aircraft of the United States;

"(2) * * * any mortgage, * * * or other instrument executed for security purposes, * * *;

* * * * * *

"(c) No conveyance or instrument the recording of which is provided for by subsection (a) of this section shall be valid in respect of such aircraft, * * * against any person other than the person by whom the conveyance or other instrument is made or given, his heir or devisee, or any person having actual notice thereof, until such conveyance or other instrument is filed for recordation in the office of the Administrator: * * *."

 By providing a federal system for registration of conveyances and liens affecting the title to aircraft, Congress has preempted that field and state recording statutes are not applicable to such title instruments.[1] However, questions of the validity of such title documents, actual notice, good faith purchaser status, and the like, must be resolved under state law.[2]

In Bordman Invest. Co. v. Peoples Bank of Kansas City, Mo.App., 320 S.W. 2d 72, 76–77, the court held in part as follows:

"In almost all jurisdictions the recognized rule is that where a mortgagee of an automobile or other chattel knows the mortgagor is a dealer, buying to sell the automobile or other chattel in the regular course of business, and consents to its sale by the mortgagor, the purchaser takes free from the mortgagee's lien. * * *

* * * * * *

"In such situations, as between an owner or mortgagee who entrusts the chattel to another for purposes other than a complete sale and the one who buys the chattel from the latter without notice of the seller's lack of authority to sell, the courts have evolved the estoppel theory based on the maxim that, as between two innocent victims of fraud, the one who makes possible the fraud on the other should suffer. It is felt that under such circumstances a purchaser in good faith of a motor vehicle from the stock in trade of a recognized dealer is not bound to investigate the dealer's title in anticipation of the unknown claims of a mortgagee or seller of such vehicle who should be aware of the danger of the buying public being misled and has made the situation possible by permitting the dealer to have the automobile in his stock in trade."

The trial court found that Securities permitted Mulcahey, Inc., to retain possession of the Owens aircraft, knowing that Mulcahey, Inc., was selling Mooney aircraft at retail to the general public in the regular course of business; that Securities permitted Mulcahey, Inc., to retain possession of the Owens aircraft for sale to the general public in the ordinary course of business, knowing that Mulcahey, Inc., would have to obtain funds from the sale of the Owens aircraft in order to pay the loan secured by the mortgage thereon to Securities, and contemplating that Mulcahey, Inc., would sell such aircraft and pay such loan from the proceeds received from such sale, and

1. Pacific Financial Corporation v. Central Bank & Trust Co., 5 Cir., 296 F.2d 68, 71; Texas National Bank of Houston v. Aufderheide, D.C.E.D.Ark., 235 F. Supp. 599, 603; United States v. United Aircraft Corporation, D.C.Conn., 80 F. Supp. 52, 54.

2. Texas National Bank of Houston v. Aufderheide, supra, 235 F.Supp. p. 603.

that Securities would then release such mortgage; and that Owens was a good faith purchaser of such aircraft from Mulcahey, Inc., in the ordinary course of business.

We are of the opinion that such findings are supported by the evidence and are not clearly erroneous.

Further, under § 1403(c), supra, Securities' mortgage is invalid as to good faith purchasers, since it did not register its mortgage with the Federal Aviation Agency. And the failure of Owens to register its title does not benefit Securities, since Securities must stand on the strength of its own title and cannot recover on the weakness of Owens's title.[3]

The judgment is affirmed.

---

3. Bordman Invest. Co. v. Peoples Bank of Kansas City, Mo.App., 320 S.W.2d 72, 75; Foulke v. McIntosh, Mo.App., 214 S.W.2d 735, 736; Universal C.I.T. Credit Corp. v. Griffith Motor Co., Mo.App., 243 S.W.2d 814, 817.