**UNITED STATES AVIATION UNDER-WRITERS, INCORPORATED, and Norman J. Cowie, Trustee, Plaintiffs,**

v.

**WTAE FLYING CLUB, an unincorporated association, by Robert Steensen and Lawrence Klein, Trustees ad litem,**
**and**
**Michigan Bank, National Association, Defendants.**

Civ. A. No. 68–215.

United States District Court
W. D. Pennsylvania.

May 23, 1969.

Norman J. Cowie, of Pringle, Bredin, Thomson, Rhodes & Grigsby, Pittsburgh, Pa., for plaintiffs.

David M. Harrison, of Harrison & Louik, Pittsburgh, Pa., for WTAE Flying Club.

Alan N. Bloch, of Wirtzman, Sikov & Love, Pittsburgh, Pa., for Michigan Bank, National Ass'n.

## FINDINGS OF FACT, DISCUSSION, AND CONCLUSIONS OF LAW

MARSH, District Judge.

On September 5, 1963, a Cessna Skyhawk airplane owned by Robert Steensen as trustee for WTAE Flying Club (WTAE) was destroyed. After litigation in the State Court, WTAE obtained a judgment against its insurer, United States Aviation Underwriters, Incorporated, in the sum of $8,547. Michigan Bank, National Association (Bank) claimed part of the proceeds of the judgment as holder of a promissory note and chattel mortgage executed by Steensen, the latter designating the Cessna as security. WTAE claimed the entire proceeds of the judgment. The insurer instituted interpleader proceedings against the claimants pursuant to Title 28 U.S.C. § 1335, and paid the face amount of the judgment plus interest in the total sum of $9,155.39 into the registry of the court.[1]

In due course the insurer was discharged of all liability to the claimants, and allowed costs and attorneys' fees in the amount of $315 out of the fund.

The controversy between the claimants was tried by the court. The court makes the following

### FINDINGS OF FACT

1. WTAE is an unincorporated association, the members of which, including Robert Steensen and Lawrence Klein, trustees ad litem, are citizens of the Commonwealth of Pennsylvania.

2. The Bank is a Michigan corporation and has its principal place of business in Detroit, Michigan.

3. The amount in controversy exclusive of interest and costs exceeds the sum of $500.

4. In January, 1963, Robert Steensen on behalf of WTAE, purchased from Aero Enterprises, Inc. (Aero), a dealer in aircraft at LaPorte, Indiana, a Cessna Skyhawk airplane for the sum of $7,400. Aero took as a trade-in WTAE's Aircoupe and gave Steensen credit for $3,000 toward the purchase price of the Cessna. Steensen signed a chattel mortgage in favor of Aero to insure the payment of the remainder. A few days later, on January 28, 1963, Steensen had issued to Aero a check in the amount of $4,435, representing the balance due on the Cessna and a $35 registration fee (WTAE Exh. G) and Aero returned its chattel mortgage to him. In July, 1963, Aero sent him the bill of sale for the Cessna; it showed type of encumbrance "none". (WTAE Exh. D). Steensen did not have a lien search made.

5. Since Steensen had paid for the plane with his own funds, WTAE desired to borrow money to reimburse him. For this purpose in June, 1963, Steensen telephoned the Bank and orally applied for a $5,000 loan to WTAE offering the Cessna as security. He told Lawrence McElhone, a Vice President of the Bank in charge of the Aircraft Department, or a subordinate, that he, Steensen, had paid for the Cessna in full with his own funds and that the loan was desired by WTAE to reimburse him. McElhone persuaded Steensen to execute the mortgage and note because the Bank was reluctant to loan money to an unincorporated club. (T. p. 91). Steensen agreed.

6. In negotiating the loan, both parties intended that Steensen was to re-

---

[1]. In addition, there was turned over to David M. Harrison, Esquire, attorney for WTAE the sum of $135.27. (Pretrial Stipulation) The facts stipulated in the Pretrial Stipulation were admitted in evidence with the consent of both counsel. (T. p. 105)

ceive the proceeds of $5,000 to reimburse him for the price of the Cessna which he bought for WTAE out of his personal funds.

7. On June 28, 1963, Steensen sent to the Bank an Aircraft Credit Statement (Bank Exh. A) in which the space entitled "Existing Lien on Aircraft" was left blank.

8. The Bank approved the loan and Steensen's credit. Steensen received from the Bank an Aircraft Check Sheet (WTAE Exh. B) and an aircraft chattel mortgage with promissory note attached in the sum of $6,124.80. (Bank Exh. B). Complying with instructions, Steensen executed and returned to the Bank the chattel mortgage and note, and the white copy of Form FAA-500, the bill of sale he had received from Aero which stated that there were no encumbrances. (T. pp. 93–94, 59–60). Also enclosed was a check payable to the Federal Aviation Agency for $8 (WTAE Exh. H) for recording the bill of sale and the mortgage, a check payable to the Bank for $6.50 for title search fee (WTAE Exh. I), an insurance policy with loss payable clause in favor of the Bank (Bank Exh. F), a financial statement, and the serial number of the Cessna.

9. Subsequently, the Aircraft Check Sheet was returned to Steensen with certain items checked off (WTAE Exh. C), being those items previously sent to the Bank. Accompanying the check sheet was a Letter of Authorization[2] on which Steensen was to state the name of the person to whom the proceeds of the loan were to be paid. On this Letter of Authorization Steensen filled in his own name and address as the person to whom the proceeds were to be paid and mailed it to the Bank, along with the Aircraft Check Sheet. The Bank received the check sheet but denies it received the Letter of Authorization.

10. On July 31, 1963, the Bank received a telefax (Bank Exh. D) from a title company notifying it that the Cessna was "titled to Aero Enterprises, Inc."

and that a mortgage existed in favor of Appliance Buyers Credit Corporation (ABC) in the amount of $6,000. The title search (Bank Exh. C) revealed that Aero had purchased the Cessna from Kentucky Air Transport, Inc. on December 10, 1962 and that its bill of sale was recorded January 3, 1963; that ABC's $6,000 lien was dated December 8, 1962 and recorded January 3, 1963.

11. On July 31, 1963, the same day it received the telefax, the Bank sent $5,000, the proceeds of the loan, by check (Bank Exh. E) payable to "Aero Enterprised, Inc. [sic.] and Buyers Credit Corporation [sic.]" to satisfy the $6,000 lien. The check noted that it covers "Steensen, Robert D. 1961 Cessna Skyhawk." The release of lien was received by the Bank and filed with the Federal Aviation Agency.

12. Although McElhone swore that he sent the $5,000 check to Aero "at the specific instructions of the Defendant [Steensen] and with the full authority of the Defendant," (paragraph 9 of Answer to New Matter, In the Court of Common Pleas, Allegheny County, Pennsylvania, No. 2488 July Term, 1964, admitted into evidence, T. pp. 129–132) the check was actually mailed to ABC, and the payment was made without the knowledge of Steensen. (T. pp. 46–50). Neither did the Bank make any inquiry of Aero as to the amount owing on the $6,000 lien. (T. pp. 50–51).

13. The following letter to ABC accompanying the $5,000 check was admitted in evidence. (T. pp. 127–129).

"Appliance Buyers Credit Corp.
200 Broad St.
St. Joseph, Michigan

Subject: Aero Enterprises, Inc. and 1961 Cessna Skyhawk N 7452X

Gentlemen:

Attached is our Official Check, #206-343, in the amount of $5,000.00 representing the total proceeds on the above subject aircraft loan.

---

2. See blank form of Letter of Authorization (WTAE Exh. J), infra, at f. n. 4.

Please use that portion of the proceeds to pay-off the lien on the aircraft and forward the remaining balance to Aero Enterprises, Inc.

Please send us a copy of the discharge of lien.

Thank you.

Very truly yours,

(Miss) Joan Gasiorowski
Aircraft Finance Division"

14. It was not until August 20, 1963, when Steensen on a trip to Detroit dropped into the Bank and inquired as to the progress of his loan, that McElhone discovered that the Bank had sent the $5,000 check to ABC and Aero. Steensen reiterated to McElhone that he (Steensen) had paid for the Cessna in full, and demanded that the Bank pay to him the proceeds of the loan.

15. McElhone persuaded Steensen to make demand on Aero for the money and to keep the Bank informed. Steensen promptly complained by telephone to Aero and in response received a letter under date of September 3, 1963, enclosing an unsigned check from Aero in the sum of $5,000. (WTAE Exh. K). Steensen informed Aero of the omission and was requested to return the check to it for signature. Steensen did so but the check was never returned. Thereafter, Steensen made many telephone calls to Aero and made two trips to LaPorte to recover the money. He succeeded in recovering $2,200 which he turned over to the Bank less his expenses of $224.60. The balance of the Bank's note and chattel mortgage is $4,149.40, including accrued interest.

16. In the meantime the Bank brought suit against Steensen in the State Court on the promissory note attached to the chattel mortgage, which suit was discontinued of record for the purpose of permitting the controversy between the claimants to be decided by this federal court in this interpleader proceeding.[3]

## DISCUSSION

### I.

The Bank's unauthorized payment to third parties constituted a negligent breach of the Bank's agreement to loan $5,000 to Steensen, which precludes recovery. The Bank knew that Steensen had paid Aero the full purchase price of the Cessna, and that he was unaware of any recorded lien. The Bank knew that Aero had stated in its acknowledged bill of sale given to Steensen that there was no encumbrance thereon. Steensen had told McElhone that he had paid the purchase price in full and that his club, WTAE, desired to reimburse him. It was intended by both the Bank and Steensen that the loan was to enable Steensen to retrieve the price which he had advanced out of his personal funds.

Moreover, the Bank contemplated according to its practice and expectation, that its customer would authorize it in writing as to the disposition of the proceeds of the loan. The Letter of Authorization (WTAE Exh. J) [4] is one of the required documents appearing on the Aircraft Check Sheet.

Reaffirming the verbally expressed purpose of the loan, Steensen stated in the Letter of Authorization which he mailed to the Bank that the $5,000 was to be sent directly to him. In the circumstances, without Steensen's express authority, it was negligence on the part of the Bank to distribute the proceeds to ABC and Aero.

It does not appear in the record that prior to sending $5,000 to ABC and Aero for a release of the lien, the Bank ascertained the amount of indebtedness, if any, remaining unpaid on the lien. On the contrary, and notwithstanding that it was in possession of Aero's bill of sale

3. See certified copy of stipulation at No. 2488 July Term, 1964 in the Court of Common Pleas of Allegheny County, Pennsylvania, filed at this Civil Action Number.

to Steensen stating no encumbrance on the Cessna, the Bank instructed ABC "to forward the remaining balance to Aero", the paid seller and lien-debtor. (See Finding of Fact No. 13). Aero endorsed the Bank's $5,000 check along with ABC. (Bank Exh. E). In the circumstances, it does not seem that the Bank's conduct was justified.

The Bank had a duty and obligation to inform its customer of the recorded $6,000 lien, and, according to its custom, to procure his written authorization before depriving him of the promised $5,-000, which not only was the intended consideration of the mortgage and note, but as the Bank well knew, was the sole reason for the loan commitment.

In these circumstances, a prudent lender of money would conduct an investigation and notify its customer as to the amount of the indebtedness secured by the recorded lien, and would not under any circumstances send the funds committed to its customer to the lien-debtor as well as the lien-creditor. The conduct of the Bank did not comport with the standard of care required of it. Its noncompliance with that standard was the sole cause of the loss, and it should bear that loss.

In the light of the foregoing, in our opinion, the Bank has failed to sustain its burden of proving its right to participate in the impleaded proceeds of WTA E's insurance policy.

### II.

We examine further the contractual rights of the parties.[5] A chattel

---

**4.** The letter reads:

### "AUTHORIZATION FOR DISBURSEMENT OF FUNDS

Date:

Michigan Bank, National Association
Guardian Building
Detroit, Michigan 48226

Re: Mortgagor: _____

    Collateral Description: _____

Gentlemen:

    The undersigned hereby empower the Michigan Bank, National Association to make for and on behalf of the undersigned the expenditures and disbursements in the amount of                 dollars   (      ) directly to
in connection with the subject loan.

_____
(purchaser)

Witnesses:

_____

_____ "    (if corporation, indicate title)

---

**5.** All questions respecting the validity of the Bank's aircraft chattel mortgage are addressed to state law under the doctrine of Erie R. Co. v. Tomkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), notwithstanding the federal aircraft recording statute, § 503(d) Federal Aviation Act of 1958, as amended, 49 U.S.C. § 1403(d). See State Securities Company v. Aviation Enterprises, Inc., 355 F.2d 225, 229, 22 A.L.R.3d 1263 (10th Cir. 1966); Northern Illinois Corp. v. Bishop Distributing Co., 284 F. Supp. 121, 124 (W.D.Mich.1968); Texas National Bank of Houston v. Aufderheide, 235 F.Supp. 599, 603 (E.D.Ark. 1964); Aircraft Investment Corp. v. Pezzani &, Reid Equipment Co., 205 F. Supp. 80, 82 (E.D.Mich.1962).

mortgage is merely security for a debt, and if there is no debt, there is no mortgage. Cf., Rumsey v. George E. Failing Company, 333 F.2d 960 (10th Cir. 1964); Chichester v. Union Bank & Trust Co. of Los Angeles, 240 F.2d 773 (9th Cir. 1957). There was no loan of money from the Bank to Steensen. He never received any consideration for the mortgage and note. Therefore, the chattel mortgage is invalid and unenforceable as a lien and the note is unenforceable as a debt for failure of consideration. Cf., Sergeant v. Martin, 133 Pa. 122, 19 A. 568 (1890).

### III.

The Bank contends that "it was authorized and legally obligated to discharge the existing encumbrance pursuant to paragraph 7 [6] of the Chattel Mortgage Agreement, without giving notice of any kind to the claimant, Steensen, the mortgagor." (Pretrial Stipulation Item VII, p. 10.) The Bank points to paragraph 2 wherein Steensen represents, warrants and covenants that the Cessna is free and clear of all encumbrances, and to paragraph 7 which provides that if the mortgagor fails to comply with any of the covenants hereof, the mortgagee may "without demand or notice, pay any * * * liens required to be paid by mortgagor, * * *."

Thus, the Bank argues that it was authorized to pay $5,000 to procure the release of the recorded $6,000 encumbrance in favor of ABC without demand or notice to Steensen.

■■ On the other hand, WTAE contends that the Bank had no contractual authority to send the proceeds of Steensen's loan to anyone other than Steensen. It points to paragraph 3 which speaks

*in futuro* and provides that the mortgagor "will not permit said aircraft * * * to be encumbered by an lien * * *." We agree with WTAE.

We construe paragraph 7 of the mortgage to give the mortgagee the right to pay liens discovered only after the lien in favor of the Bank has been created by payment of $5,000 to the mortgagor or to someone authorized by him. Payment of such after-discovered liens would "constitute a *further* lien upon said aircraft under this mortgage." (emphasis supplied).

Moreover, the fact that the Bank customarily required a Letter of Authorization to pay the proceeds of the loan to someone other than the mortgagor seems conclusive that the last quoted clause does not refer to the proceeds of the proposed loan. It follows that the phrase "without demand or notice" is applicable only after the mortgagee has a lien on the aircraft which has been created in accordance with the intentions of the parties. At the time the $5,000 was sent to ABC and Aero, the Bank had no lien on the Cessna to protect.

■■ A contract must receive a reasonable interpretation, according to the intention of the parties if that intention can be ascertained from its language. In order to ascertain that intention, the court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject matter of the agreement. If, therefore, the contract, or any part of it, is susceptible of two reasonable constructions, it is an elementary proposition that a written contract should, in case of doubt, be interpreted against the party who has drawn it. Jenkins

---

6. Paragraph 7 provides: "If said mortgagor fails to comply with any of the covenants or conditions hereof, in addition to such other remedies as the mortgagee may have, said mortgagee may without demand or notice, pay any taxes, assessments, premiums, fees or liens required to be paid by mortgagor, effect any insurance provided for herein, (or effect such insurance as mortgagee deems appropriate to the situation), and the sums paid for any one or all of said purposes shall from the time of the payment thereof be due with interest thereon at the highest lawful rate, and shall constitute a further lien upon said aircraft under this mortgage."

Towel Serv., Inc. v. Fidelity-Phila. Trust Co., 400 Pa. 98, 161 A.2d 334 (1960).

It is our opinion that the chattel mortgage did not authorize the Bank to distribute the proceeds of Steensen's loan to ABC, the owner of the existing $6,000 recorded lien, and to Aero, the lien-debtor and paid seller of the Cessna.

## IV.

Even if the mortgage were construed to permit the Bank to advance the proceeds of the loan to discharge an existing recorded lien without demand or notice to the mortgagor, the Bank would not be entitled to recover. Paragraph 7 specifically authorizes the mortgagee to pay, inter alia, liens which are "required to be paid by the mortgagor. * * *" (emphasis supplied). The $6,000 ABC lien was not a lien which Steensen was "required" to pay.

■ Steensen was a buyer of the Cessna in the ordinary course of business. A buyer in the ordinary course of business is one who in good faith and without knowledge that the sale to him is in violation of the ownership rights or the lien of a third party in the goods, buys in ordinary course from a person in the business of selling goods of that kind. Steensen was such a buyer. There is no evidence that he did not purchase the Cessna from Aero in good faith. Nor is there any evidence that the sale to him by Aero was in violation of ABC's rights. Steensen took possession of the Cessna free of the $6,000 chattel mortgage executed by Aero, his vendor, notwithstanding that this lien was perfected by filing with the Federal Aviation Agency. As the Bank's mortgagor, Steensen was not *required* to pay the lien held by ABC.

Although not briefed by the parties, the foregoing we think is the substantive law of Indiana (Helms v. American Security Co. of Indiana, 216 Ind. 1, 22 N.E. 2d 822 (1939)) which is applicable since Aero, the debtor under the chattel mortgage held by ABC, had its chief place of business in that state when it executed that chattel mortgage. (Bank's Exh. C).[7] The law of Indiana is in accord with the law of Pennsylvania. See: Sterling Acceptance Co. v. Grimes, 194 Pa.Super. 503, 168 A.2d 600 (1961); 12A Purdon's Pa.Stat.Ann. § 9–307 (1969 Supp.).

## V.

■ Since Steensen was not "required" to pay ABC's $6,000 lien, neither was the Bank, and by doing so it acted as a mere volunteer and may not be subrogated to the rights, if any, of ABC. Cf., Lackawanna Trust & Safe Deposit Co. v. Gomeringer, 236 Pa. 179, 84 A. 757 (1912); Hogg v. Longstreth, 97 Pa. 255 (1881); Home Owners' Loan Corporation v. Crouse, 151 Pa.Super. 259, 30 A.2d 330 (1943); International Harvester Co. v. Tuscarora Twp., 43 Pa.Super. 410 (1910).

■ The foregoing disposes of the Bank's contention to the effect that a denial of its claim will result in unjust enrichment to WTAE. By paying off an unenforceable recorded lien on WTAE's plane, it did not confer any benefit on WTAE or Steensen. See: Restatement, Restitution, § 112.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the subject matter of this action pursuant to Title 28 U.S.C. § 1335, and the claim-

7. A Pennsylvania court would look to the law of the jurisdiction in which a debtor's chief place of business is located; thus the law of Indiana governs the effect of the lien held by ABC. See 12A Purdon's Pa.Stat.Ann. § 9–103(2) (1969 Supp.). Since the Uniform Commercial Code was not effective in Indiana until July 1, 1964 (see Acts 1963, Ch. 317, noted p. 3, Vol. 5, Burn's Ann.Stats. following § 19–1–101), the common law as expressed in Helms v. American Security Co. of Indiana, supra, is decisive regarding the enforceability of ABC's recorded chattel mortgage.

The provisions of Title 49 U.S.C. § 1406 are not applicable to ABC's recorded chattel mortgage because it was delivered prior to the date of the enactment of that statute.

ants have stipulated that this court should decide the action brought in the Court of Common Pleas of Allegheny County, Pennsylvania, by Michigan Bank, National Association, against Robert D. Steensen at No. 2488 July Term, 1964.

2. Michigan Bank, National Association breached its commitment to loan Robert D. Steensen $5,000 when without demand or notice to him, and in absence of a Letter of Authorization or other express authority from him, it negligently paid the proceeds of the loan to Appliance Buyers Credit Corporation and Aero Enterprises, Inc.

3. The chattel mortgage and promissory note executed by Robert D. Steensen to Michigan Bank, National Association are not supported by consideration and consequently those instruments are invalid and unenforceable.

4. Paragraph 7 of the chattel mortgage involved did not authorize Michigan Bank, National Association to pay the proceeds of the loan committed to Robert D. Steensen, to Appliance Buyers Credit Corporation and Aero Enterprises, Inc. in order to procure a release of an existing recorded lien in favor of Appliance Buyers Credit Corporation.

5. The $6,000 recorded lien in favor of Appliance Buyers Credit Corporation was not a lien "required to be paid by mortgagor" as provided in paragraph 7 of the chattel mortgage executed by Steensen to the Bank, since Steensen was a buyer of the aircraft in the ordinary course of business.

6. Michigan Bank, National Association paid $5,000 to Appliance Buyers Credit Corporation and Aero Enterprises, Inc. to discharge Appliance Buyers Credit Corporation's $6,000 recorded lien as a mere volunteer and is not entitled to be subrogated to the rights, if any, of Appliance Buyers Credit Corporation against the proceeds of the hull insurance policy paid into court.

7. WTAE Flying Club has not been unjustly enriched by the payment by Michigan Bank, National Association of $5,000 to Appliance Buyers Credit Corporation and Aero Enterprises, Inc.

8. The claimant, WTAE Flying Club, an unincorporated association, by Robert Steensen and Lawrence Klein, trustees ad litem, is entitled to the entire fund paid into court by United States Aviation Underwriters, Incorporated, and Norman J. Cowie, trustee, the plaintiffs in this interpleader action, and Michigan Bank, National Association is not entitled to any portion of the impleaded funds.

9. The costs incurred in this interpleader action including the attorney's fee and costs paid to the plaintiffs in the amount of $315, and the costs at No. 2488 in the Court of Common Pleas of Allegheny County, Pennsylvania, should be paid by Michigan Bank, National Association.