**BANK OF HENDERSONVILLE,**
**Plaintiff-Appellee,**

v.

**RED BARON FLYING CLUB, INC.,**
**Defendant-Appellant.**

Court of Appeals of Tennessee,
Middle Section.

Dec. 2, 1977.

Certiorari Denied by Supreme Court
July 31, 1978.

W. Harold Bigham, Nashville, for plaintiff-appellee.

Ernest Williams, III, Memphis, for defendant-appellant.

OPINION

*With the concurrence of participating judges, the original opinion has been abridged for publication.*

TODD, Judge.

The defendant, Red Baron Flying Club, Inc., has appealed from the Chancellor's decree sustaining the lien claim (security interest) of the plaintiff, Bank of Hendersonville, in respect to an aircraft purchased by appellant from Mid-South Aviation, Inc.

The facts are uncontroverted. Mid-South, an aircraft dealer, sold to Red Baron the subject aircraft out of its (Mid-South's) stock of several aircraft. The plane was paid for by cashier's check. At the time, the appellee bank held a security interest upon a number of Mid-South's aircraft, including the subject plane. The bank's security interest was at all pertinent times duly recorded with the F.A.A. Aircraft Registry. Mid-South failed to satisfy the security interest and this suit was filed to enforce same in respect to the subject plane.

The sole question is one of law: whether a security interest upon an airplane held as part of a dealer inventory duly recorded as required by federal law, is superior to the rights of a purchaser for value from the dealer without actual notice of the security interest.

T.C.A. § 47–9–307 provides:

"*47–9–307. Protection of buyers of goods.*—A buyer in ordinary course of business (subsection (9) of § 47–1–201) other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence. [Acts 1963, ch. 81, § 1 (9–307); 1965, ch. 362, § 1.]"

T.C.A. § 47–9–104 provides in part:

"*47–9–104. Transactions excluded from chapter.*—This chapter does not apply

(a) to a security interest subject to any statute of the United States such as the Ship Mortgage Act, 1920, to the extent that such statute governs the rights of parties to and third parties affected by transactions in particular types of property; or . . ."

"Comments to Official Text" under said statute include the following:

"*Purposes* :

To exclude certain security transactions from this Article [Chapter].

1. Where a federal statute regulates the incidents of security interests in particular types of property, those security interests are of course governed by the federal statute and excluded from this Article [Chapter]. The Ship Mortgage Act, 1920, is an example of such a federal act. Legislation covering aircraft financing has been proposed to the Congress, and, if enacted, would displace this Article [Chapter] in that field. The present provisions of the Civil Aeronautics Act (49 U.S.C. § 523) call for registration of title to and liens upon aircraft with the Civil Aeronautics Administrator and such registration is recognized as equivalent to filing under this Article [Chapter] (Section 9–302(3) ); but to the extent that the Civil Aeronautics Act does not regulate the rights of parties to and third parties affected by such transactions, security interests in aircraft remain subject to this Article [Chapter], pending passage of federal legislation."

Title 49 §§ 1403, 1406, of the U.S. Code provides:

"*§ 1403. Recordation of aircraft ownership*

*Establishment of recording system*

(a) The Secretary of Transportation shall establish and maintain a system for the recording of each and all of the following:

(1) Any conveyance which affects the title to, or any interest in, any civil aircraft of the United States; . . .

.    .    .    .    .

*Effect of recording*

(d) Each conveyance or other instrument recorded by means of or under the system provided for in subsection (a) or (b) of this section shall from the time of its filing for recordation be valid as to all persons without further or other recordation, . . .

.    .    .    .    .

§ 1406. *Law governing validity of certain instruments*

The validity of any instrument the recording of which is provided for by section 1403 of this title shall be governed by the laws of the State, District of Columbia, or territory or possession of the United States in which such instrument is delivered, irrespective of the location or the place of delivery of the property which is the subject of such instrument. Where the place of intended delivery of such instrument is specified therein, it shall constitute presumptive evidence that such instrument was delivered at the place so specified."

Appellant insists that the federal statute just quoted does not aptly preempt and remove airplanes from the provisions of the state statute which favor a purchaser in ordinary course of business over the holder of a mortgage on inventory.

Appellee insists that the federal statute does preempt the subject of priority of interests in aircraft and creates a right in favor of the holder of a security interest in

an aircraft held in stock by a dealer superior to that of a purchaser from the dealer in ordinary course of business.

In *Texas National Bank of Houston v. Aufderheide et al.* (U.S.D.C.Ark.—1964), 235 F.Supp. 599, there was a "floor plan" lien, duly recorded with the F.A.A., but the mortgagee was shown to have followed a practice of allowing the dealer to sell and deliver planes out of stock in violation of the mortgage instrument. The District Court held that the mortgagee had, by its conduct, waived any priority of rights against the purchaser and said:

"[1] There is no question that the Congress by the statutory enactments which have been mentioned has preempted the field of registration and recording of title instruments affecting commercial aircraft, *Pacific Financial Corporation v. Central Bank & Trust Co.*, 5 Cir., 296 F.2d 68, 71, so that protection is no longer afforded to a purchaser or mortgagee of such an aircraft by a recording of his conveyance or mortgage under a State recording statute.

"[2] On the other hand, compliance with section 1403 does not validate a conveyance or other instrument which is lacking in initial or inherent validity as a contract document between the original parties, as, for example, a mortgage or conveyance obtained by fraud or without consideration, or executed by an incompetent party. Questions of such inherent or original validity must be determined by reference to applicable State law. This has been expressly recognized by the Congress. See in this connection the Act of June 30, 1964, P.L. 88–346, 78 Stat. 236, which statute, among other things, provides that the validity of a conveyance or other instrument affecting an aircraft is to be determined by the law of the place where the instrument is delivered. In the Court's estimation the validity about which Congress was talking in the 1964 Act is what the Court has referred to as the initial or inherent validity of the instrument in question.

"[3] While the act of recording a conveyance or mortgage under the terms of the federal statute or any other recording statute does not confer inherent validity upon an instrument otherwise basically invalid, proper recordation can, and usually does, have a substantial bearing on the validity of the instrument as to third persons, and as to the priority to be accorded to that instrument with respect to other claims or liens affecting the property involved whether arising before or after the recordation.

. . . . .

## II.

"[5, 6] It does not follow, however, that section 1403 has repealed or abolished the general rule of chattel mortgage law that when a mortgagee consents to the sale of a mortgaged chattel free of lien by the mortgagor, the purchaser takes free of the mortgage lien and his rights are superior to those of the mortgagee. 15 Am. Jur.2d, Chattel Mortgages, §§ 150, 151, and 153; 14 C.J.S. Chattel Mortgages § 262. And a provision in a chattel mortgage prohibiting a sale of the mortgaged chattel without a mortgagee's consent is waived if the mortgagee knowingly permits the violation of such provision. 15 Am.Jur.2d, p. 324." 235 F.Supp., p. 603.

In *State Securities Company v. Aviation Enterprises, Inc. et al.* (10th CA, 1966), 355 F.2d 225, the dealer executed a mortgage on the subject aircraft which was subsequently sold to a customer who had no knowledge of the mortgage which was *not* recorded with the F.A.A. as required by federal law. The purchaser did not record his bill of sale with the F.A.A., but the U.S. Court of Appeals sustained the rights of the purchaser as superior to those of the mortgagee stating:

"[1, 2] By providing a federal system for registration of conveyances and liens affecting the title to aircraft, Congress has preempted that field and state recording statutes are not applicable to such title instruments. However, questions of the validity of such title documents, actual notice, good faith purchaser status, and the like, must be resolved under state law.

"In *Bordman Invest. Co. v. Peoples Bank of Kansas City*, Mo.App., 320 S.W.2d 72, 76–77, the court held in part as follows:

'In almost all jurisdictions the recognized rule is that where a mortgagee of an automobile or other chattel knows the mortgagor is a dealer, buying to sell the automobile or other chattel in the regular course of business, and consents to its sale by the mortgagor, the purchaser takes free from the mortgagee's lien. . . .

'In such situations, as between an owner or mortgagee who entrusts the chattel to another for purposes other than a complete sale and the one who buys the chattel from the latter without notice of the seller's lack of authority to sell, the courts have evolved the estoppel theory based on the maxim that, as between two innocent victims of fraud, the one who makes possible the fraud on the other should suffer. It is felt that under such circumstances a purchaser in good faith of a motor vehicle from the stock in trade of a recognized dealer is not bound to investigate the dealer's title in anticipation of the unknown claims of a mortgagee or seller of such vehicle who should be aware of the danger of the buying public being misled and has made the situation possible by permitting the dealer to have the automobile in his stock in trade.' " 355 F.2d, p. 229.

*Northern Illinois Corporation v. Bishop Distributing Co. et al.*, USDC Mich. 1968, 284 F.Supp. 121, involved the same situation and decision as *Texas National Bank, supra,* with quotations from the Uniform Commercial Code (§ 9–307 *supra,*) and the "Comment" to § 9–104, quoted *supra.* Also said opinion states:

"Plaintiff argues that because aircraft are much more costly than household goods or cars, a buyer of an aircraft should be required to conduct an aircraft title search. In this respect, plaintiff contends that all that would have been required of the defendants would have been for them to check with the Federal Aviation Agency in Oklahoma City, Oklahoma.

"[9] We question whether the price of goods should determine the duties and obligations of the buying public. Plaintiff was aware that Mich-Air Mooney, Inc. purchased the aircraft in order to sell it.

"[10–13] Although both plaintiff and defendants are innocent parties to a very unhappy chain of events, in determining who should bear the loss we conclude that buyers in the ordinary course of business should not be required to act at their peril. As Chief Judge Henley said in Texas National Bank of Houston, *supra* :

'Ordinarily, when a person goes into a merchant's place of business to make a purchase, whether it be of an automobile, a television set, a washing machine, or a pound of nails, the purchaser ought to have the right to assume that the merchant has a right to sell the commodity in question and should not be required to make a record search before purchasing or to see to it that the merchant obtains a valid release of the item from a bank floor plan before delivering it to the purchaser and receiving his money or obligation. The Court sees no reason why that right should not extend to the purchaser of an airplane who buys it from a recognized dealer from a regular inventory or display and in the ordinary course of business. 235 F.Supp. at 604." 284 F.Supp., p. 125.

*United States Aviation Underwriters v. WTAE Flying Club et al.*, U.S.D.C.Penn. 1969, 300 F.Supp. 341, was an interpleader suit to determine right to proceeds of insurance policy on an aircraft which was encumbered with a duly recorded lien at the time it was purchased from a dealer. The District Court awarded proceeds to the purchaser on grounds of misconduct of the lienholder and said:

"[8] Steensen was a buyer of the Cessna in the ordinary course of business. A buyer in the ordinary course of business is one who in good faith and without

knowledge that the sale to him is in violation of the ownership rights or the lien of a third party in the goods, buys in ordinary course from a person in the business of selling goods of that kind. Steensen was such a buyer." 300 F.Supp., p. 348.

In *Suburban Trust & Svgs. Bank v. Campbell*, 1969, 19 Ohio Misc. 74, 250 N.E.2d 118, the rights of a purchaser in ordinary course of business were held superior to the lien of a chattel mortgage executed by the dealer after the sale to renew a prior mortgage recorded before the sale. Although decided on principles of novation, the opinion also supports the superior rights of the purchaser of an airplane in ordinary course of business.

In *Southern Jersey Airways, Inc. v. National Bank of Secaucus*, 1970, 108 N.J.Super. 369, 261 A.2d 399, there was a contest between the holder of an unrecorded mechanic's lien in possession and the holder of a prior mortgage duly recorded with the F.A.A. The New Jersey Appellate Division held in favor of the mechanic and said:

"[5–7] Thorough study of the matter convinces us that Congress did not intend by adoption of the cited recordation procedure necessarily to displace and preempt all state law otherwise applicable bearing upon priorities of lien and title interests in aircraft. Rather was it the intent, in relation to aircraft, to substitute for the multiplicity of state registration or recording systems a single preemptive federal system for registering (1) instruments of title, comparable to state registration of titles to motor vehicles, and recording (2) security documents of the kinds commonly comprehended by state recording laws concerning written consensual security interests affecting personal property. The reason was that the ready mobility of aircraft and their common use across state lines made it cumbersome and burdensome for persons having concern with title to or incumbrances on aircraft to have to record or search in all states or localities which could arguably be claimed to constitute the proper recording situs in relation to the specific owner or incumbrancer of a particular aircraft. See Scott, 'Liens in Aircraft: Priorities,' 25 J. Air L. & Com. 193, 200, 203 (1958); Case Note, 48 Colum.L.Rev. 1248 (1948). Thus, failure to federally record a recordable instrument would entail the specific consequences declared by § 1403(c), but no other. Federal recording would validate a title or incumbrance as against any claim of invalidity based upon absence of state recording, but would not necessarily create affirmative priority as against competing rights declared by applicable state law.

.    .    .    .    .    .

". . . Professor Gilmore's authoritative text states:

The several provisions summarized above obviously amount to a good deal more than a recording system (like the patent and copyright provisions) but are still a good deal less than a comprehensive coverage of security interests in aircraft; they are much less comprehensive than the Ship Mortgage Act, which goes into great detail on the formal requisites and priorities of ship mortgages and includes sections on foreclosure and on the status of mortgages on foreign flag ships. There is of course no plenary federal power over air transportation comparable to the patent and copyright powers or even to the extention [sic] of the 'judicial power of the United States' to admiralty and maritime cases. Here Congress acts under the interstate commerce and the bankruptcy powers—which have, however, become so extensive that there is not likely to be any constitutional challenge to anything Congress has done or may do in the future. A truly comprehensive security statute for aircraft—or indeed a statute covering security interests in transportation equipment of any kind, by air, rail, road and water—would undoubtedly be within the power of Congress to enact; there is, however, little likelihood that such a federal preemption of the field will take place in the near future. [1 Gilmore, Security Interests in Personal Property, § 13.5, at 423 (1965).]

"Except for the engine and spare parts liens, § 503 is not in any sense a substantive statute. Therefore, it is believed, apart from these substantive provisions, the question of formal requisites, and the operation of the recording system, state law should apply to determine any question arising in connection with a security interest in aircraft. The argument for a federal law solution is even weaker here than under any of the other federal statutes we have so far discussed: § 503 is much less comprehensive than the Ship Mortgage Act and there is not the same federal source of power that could be alleged in favor of a federal solution in the fields of copyright, patent and admiralty law. The cases decided under § 503 all seem to assume that state law is generally applicable and that § 503 is clearly an 'interstitial' statute, which goes as far as it goes but no further. [Id., at 426–427].

"Striking a similar note is Scott, *supra*, 25 J. Air L. & Com., at 202, wherein, after discussing the case holding the federal act constitutionally applicable to aircraft used solely in intrastate commerce, the writer says:

"*Meaning of Section 503* [now § 1403]. Accepting the constitutional validity of the section, we are then faced with the more important question—what priority in right is obtained by a security holder through federal recordation? Clearly it is not axiomatic that recordation assures priority as to subsequent lienors, and the statutory language cannot be construed in such a way as to leave the matter free from doubt. The statute merely provides that conveyances or other instruments filed for recordation 'shall be valid as to all persons. . . .' It does not speak in positive terms of priority, as does for instance the Ship Mortgage Act of 1920 discussed above.

"Most of the decisions having to do with the federal act have been careful to delineate its recording provisions as preemptive and exclusive only in respect of place and requirements of recording and the effect of failure to record a federally recordable conveyance or instrument as to subsequent bona fide purchasers or lienors without notice. *Aircraft Investment Corp. v. Pezzani & Reid Equipment Co.*, 205 F.Supp. 80, 82 (E.D.Mich.1962); *American Aviation v. Aviation Insurance Managers, Inc.*, 244 Ark. 829, 427 S.W.2d 544, 547 (Sup.Ct.1968); *Blalock v. Brown*, 78 Ga.App. 537, 51 S.E.2d 610, 9 A.L.R.2d 476 (Ct.App.1949); *State Securities Company v. Aviation Enterprises, Inc.*, 355 F.2d 225, 229, 22 A.L.R.3d 1263 (10 Cir. 1966); *Marsden v. Southern Flight Service, Inc.*, 227 F.Supp. 411, 415 (M.D.N.C. 1961); cf. *Lochhead v. G. A. C. Finance Corp. of Camelback*, 6 Ariz.App. 539, 434 P.2d 655 (Ct.App.1968); *Curtis v. Carey*, 393 S.W.2d 185, 189 (Tex.Ct.Civ.App. 1965).

. . . . .

"Plaintiff suggests that Congress has preempted the entire field of conveyancing of interests in aircraft. This view is erroneous, notwithstanding *in re Veterans' Air Express Company*, 76 F.Supp. 684 (D.N.J.1948), which contains dicta on which plaintiff relies. Congress has said only that until an instrument purporting to convey an interest in an aircraft is recorded, in accordance with the Act, it is void as to third parties without notice. Upon federal recordation, it is valid without further recording. [205 F.Supp., at 82]" 261 A.2d, pp. 403, 404, 405.

In *Dowell v. Beech Acceptance Corp.*, 1971, 3 Cal.3d 544, 91 Cal.Rptr. 1, 476 P.2d 401, the California Supreme Court, relying principally upon decisions of the California Court of Appeals, determined that a lien upon part of an aircraft dealer's stock in trade, duly recorded with F.A.A., was superior to the claim of a purchaser in ordinary course of business. The California Court was of the opinion that the federal statute did preempt all phases of lien law in respect to aircraft and thereby created an exception to the provisions of U.C.C. as to purchasers in ordinary course of business. The same opinion relies upon the annotation in 22 A.L.R.3d 1270. The pertinent portion of said annotation is § 12(b), pp. 1292 and 1293

wherein only two cases are mentioned. One is *Dawson v. General Discount Corp.*, 82 Ga.App. 29, 60 S.E.2d 653 (1950) which was not based upon the U.C.C. protection of purchasers (from a dealer) in ordinary course of business. The unsuccessful defendant, Dawson, purchased the plane from an individual who had not satisfied the lien of a duly recorded conditional sales contract.

The only other case mentioned in said annotation is *Texas Nat. Bk. v. Aufderheide*, a 1964 case already discussed, wherein the rights of the purchaser were upheld.

The *Dowell* decision also relies upon three U.S. District Court decisions and two State decisions which involved superiority of recorded liens over unrecorded mechanics liens and one State decision involving superiority of prior recorded chattel mortgage over subsequently recorded chattel mortgages. None of the out-of-state authorities relied upon in *Dowell* involves the rights of a purchaser in ordinary course of business from a dealer.

*Dowell* does recognize *Northern Ill. Corp. v. Bishop Co.* and *Texas National Bank v. Aufderheide*, supra, but "simply declines to follow them."

*Dowell* ignores *State Securities Co. v. Aviation Enterprises Inc.* (U.S. Court of Appeals), *U. S. Aviation Underwriters v. WTAE Flying Club* (U.S. District Court, Penn.), and *Southern Jersey Airways v. National Bank of Secaucus* (New Jersey Appellate Div.), all discussed supra.

Subsequent decisions have been contrary to the holding of *Dowell*.

In *Carolina Aircraft Corp. v. Commerce Trust Co.* (Fla.App.1974), 289 So.2d 37, the lien of a mechanic in possession was held to be superior to that of a prior recorded mortgage.

To the same effect is *Industrial National Bank of Rhode Island v. Butler Aviation International, Inc.*, U.S.D.C.E.D.N.Y.—1974, 370 F.Supp. 1012.

In *Idabel National Bank v. Tucker*, Okl. App.1975, 544 P.2d 1287, Cert. Den. by Okl. Supr.Ct., the title and right of a purchaser in ordinary course of business was held to be superior to that of a bank holding a prior recorded mortgage from the dealer. After quoting applicable and persuasive portions of the legislative history of the 49 U.S.C.A. § 1403, the Oklahoma Court adopts the language of *Texas National Bank v. Aufderheide*, supra as follows:

"Ordinarily, when a person goes into a merchant's place of business to make a purchase, whether it be of an automobile, a television set, a washing machine or a pound of nails, the purchaser ought to have the right to assume that the merchant has a right to sell the commodity in question and should not be required to make a [second] search before purchasing or to see to it that the merchant obtains a valid release of the item from a bank floor plan before delivering it to the purchaser and receiving his money or obligation. The Court sees no reason why that right should not extend to the purchaser of an airplane who buys it from a recognized dealer from a regular inventory or display and in the ordinary course of business." 544 P.2d, p. 1291.

Appellee relies upon only one authority, *Dowell*, and states that all other authorities are ill considered and that *Dowell* is dominant because the U.S. Supreme Court denied certiorari in that case.

The denial of certiorari by the United States Supreme Court cannot be ignored, but its action (or inaction) must be considered in the light of the repeated assertions of that Court that its denial of certiorari is not proper basis for unwarranted inferences of what the holding of the Court might have been had it granted certiorari. It is also significant that *Dowell* preserved and extended the encroachment of federal law in the state field of commercial law, rather than restricting the application of federal law. State decisions of the former type have been rarely reviewed by the U.S. Supreme Court, whereas decisions of the latter type have been more frequently reviewed.

California appears to stand alone in its insistence that a customer who buys an

airplane out of the stock of a dealer must carry out a "title search" for recorded "floor plan" liens.

This Court prefers to follow the rule announced in all other jurisdictions that the rights of a purchaser from a dealer in ordinary course of business are superior to the holder of a lien upon a moving stock of planes in the hands of a dealer. There are a number of reasons why this decision is preferable.

1. The Uniform Commercial Code has brought uniformity and order to the field of commercial law. To graft a new class of exceptions upon the existing uniform law would reverse the wholesome intent and result of the law.

2. It is not reasonable to assume that Congress intended any such result where not clearly stated.

3. The proliferation of aircraft dealerships and aircraft purchases would be seriously hampered if the public were not allowed to trust dealers selling in ordinary course of business.

4. It is inequitable and unjust to allow a mortgagee to hold "secret liens" on chattels while authorizing the chattels to be exhibited for sale by a dealer to the deception and loss of the purchasing public.

5. Lienholders may protect themselves (if they desire) by impounding the mortgaged planes in locked surroundings inconsistent with the free-sale situation of a stock of merchandise.

For the reasons and under the authority stated, the decree of the Chancellor is reversed, the plaintiff's suit against Red Baron Flying Club, Inc., is dismissed, and all costs, including costs of this appeal, are taxed against the plaintiff.

Reversed and Dismissed.

SHRIVER, P. J., concurs.

DROWOTA, J., dissents.

DROWOTA, Judge, dissenting.

I respectfully dissent from the conclusion reached in the majority opinion that the purchaser of an aircraft who qualifies as a "buyer in ordinary course of business" under T.C.A. § 47–9–307 is protected by that statute from the claim of one holding a security interest recorded under 49 U.S.C. § 1403 prior to the sale. While the issue is obviously not free from doubt and while the force of many of the policy considerations espoused by the majority in favor of the U.C.C. rule cannot be gainsaid, I believe that Congress intended in § 1403 to set up a rule of priority that controls the instant situation, and that we should follow *Dowell v. Beech Acceptance Corp., Inc.*, 3 Cal.3d 544, 91 Cal.Rptr. 1, 476 P.2d 401 (1970).

The Court in *Dowell* furnishes a reasoned explanation of its conclusion that 49 U.S.C. § 1401 *et seq.* pre-empt state priority rules and render the rights of the holder of a security interest recorded under § 1403 prior to the sale of an aircraft superior to those of one who buys the aircraft in the "ordinary course of business" within the meaning of U.C.C. § 9–307. In addition, a reading of the federal provisions themselves seems to me to require this result. Section 1403(a) sets out the types of interests recordable under the statute, and its language encompasses the security interest involved in the instant case. Section 1403(c) provides that no instrument recordable under the statute shall be "valid" except against "the person by whom the conveyance or other instrument is made or given, his heir or devisee, or any person having actual notice thereof" until it is recorded as provided in the statute. The effect of proper recording is stated by § 1403(d) to be as follows:

> (d) Each conveyance or other instrument recorded by means of or under the system provided for in subsection (a) or (b) of this section shall from the time of its filing for recordation be *valid as to all persons* without further or other recordation . . . . (Emphasis added.)

That "valid" does not refer to the inherent validity of the recorded instrument itself is shown by the express commitment of that issue to state law in § 1406. The most logical explanation of § 1403(d), then, is that recording an instrument makes it "val-

id as to all persons" in the sense that its holder acquires rights superior to those acquired by subsequent persons such as purchasers.

The priority conferred by recording under § 1403 is very similar to that given recorded deeds of real property under the theory of constructive notice. The similarity is brought out by a description of the effect of § 1403 recording in the legislative history of the 1964 amendment to § 1401 *et seq.* It is there stated that, when an instrument has been properly recorded under the statute,

> . . . all persons are deemed to have notice of its existence and its effect on title to the property covered thereby. Consequently, to determine whether there are any encumbrances on the aircraft, it is only necessary to consult the central file.

1964 U.S.Code Cong. & Admin.News, pp. 2319, 2320. In my view, this strengthens the conclusion that the rights of one who has recorded a security interest under § 1403 are superior to those of a subsequent purchaser of the encumbered aircraft.

Much of the policy in favor of protecting one who purchases in the ordinary course of business is sound, and has been widely accepted by state courts and by state legislatures adopting the U.C.C. Nevertheless, 49 U.S.C. § 1403 evidences Congress's intent to reverse this rule in the case of security interests in aircraft which are recordable under the statute. Congress has chosen to give priority to the secured party rather than the buyer in such cases by applying its own uniform rule, a rule not subject to change by the legislatures of the several states. This uniform federal rule simply removes the priority question from determination under the U.C.C. when certain aircraft are involved, rather than "grafting exceptions" onto the Code as the majority suggest. The principle of federal supremacy, recognized in T.C.A. § 47-9-104, requires that this federal priority rule replace

conflicting state rules of priority with regard to aircraft.

Further, the buyer's burden of checking the federal record in such cases is a light one. This is especially so when it is compared to the steps a secured party would have to take, such as locking up the aircraft, to protect himself under the majority's approach. Far from being "secret," any interest recorded under § 1403 is readily available for anyone to see. Finally, it is again pointed out that the similar system of "constructive notice" in real property recording, under which a subsequent purchaser would not take free of previously recorded instruments in his chain of title, has worked reasonably well and is not generally considered to be unfair.

In sum, I find in 49 U.S.C. § 1401 *et seq.* an intent to prefer the rights of a secured party such as plaintiff over those of a buyer in the ordinary course of business such as defendant in the circumstances of the instant case. The *Dowell* Court was correct in saying that

> . . . [t]he federal policy to foster recordation and to protect recorded interests is eviscerated by a rule which relies on state laws to protect the buyer in the ordinary course of business even though he fails to undertake a simple title search which would have readily revealed all encumbrances.

91 Cal.Rptr. at 6, 476 P.2d at 406. We should not frustrate the federal purpose of encouraging recording of interests in aircraft and disregard the intent of Congress by reading state laws of priority such as U.C.C. § 9–307 into the federal scheme.