108 N.J. Super. 369 (1970)
261 A.2d 399
SOUTHERN JERSEY AIRWAYS, INC., PLAINTIFF-APPELLANT,
v.
NATIONAL BANK OF SECAUCUS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 14, 1969.
Decided January 27, 1970.
*373 Before Judges CONFORD, COLLESTER and KOLOVSKY.
Mr. Isaac C. Ginsburg argued the cause for appellant (Messrs. Feinberg & Ginsburg, attorneys).
Mr. William R. Serber argued the cause for respondent (Messrs. Kirkman, Mulligan, Bell & Armstrong, attorneys).
The opinion of the court was delivered by CONFORD, P.J.A.D.
This appeal presents a complex legal problem concerning priority of interest in respect of an aircraft as between the lien of a security agreement thereon held by defendant bank and a statutory possessory lien (N.J.S.A. 2A:44-1 et seq.; L. 1934, c. 121) (hereinafter referred as an "aircraft mechanic's or artisan's lien") for services and materials subsequently furnished to the owner in relation to the aircraft by plaintiff, which is engaged in the business of servicing, supplying and storing aircraft. In particular, we are concerned with the effect of the recording provisions of § 503 of the Federal Aviation Act of 1958, 49 U.S.C.A. § 1403, as applied to the instant facts.
Defendant bank recorded its security agreement at the office of the Federal Aviation Agency (FAA) in Oklahoma City pursuant to the federal act; plaintiff did not record its statutory lien until after the bank purported to seize and sell the aircraft (to itself) after default on the loan by the owner. The combination of these facts was held by the Atlantic County Court to warrant entry of summary judgment in favor of the bank declaring its interest in the plane to enjoy priority over that of the aircraft mechanic and awarding the bank possession. Reliance was had upon Smith v. Eastern Airmotive Corp., 99 N.J. Super. 340 (Ch. Div. 1968). We conclude this was error, and reverse.
The material facts are undisputed. On August 11, 1967 the New York law firm of Saxe, Bacon and Bolan, owner, borrowed $32,500 from defendant bank and executed *374 a note and "security agreement" covering the aircraft in favor of the bank as collateral for the loan. This was recorded with the FAA on October 3, 1967. Thereafter the plane was stored and mantained at plaintiff's hangar at Bader Field, Atlantic City. During a period of time in 1968 the owner incurred unpaid charges to plaintiff for storage, repairs, maintenance and fuel amounting to some $4,515.[1] The aircraft remained in plaintiff's possession. The owner having defaulted on its loan to the bank, the latter on December 9, 1968 appointed a bailiff to take possession of the plane. The bailiff on December 16, 1968 purported to take possession and posted a notice of public sale thereof on the aircraft. On December 30, 1968 the bailiff sold the plane at public sale, and the bank purchased it as the highest bidder. However, plaintiff refused to surrender possession, having physically retained possession at all times, relying upon its statutory aircraft mechanic's lien. After preliminary legal skirmishes involving a futile attempt by the bank to obtain possession by posting a bond under the New Jersey aircraft mechanic's lien law, cited above, plaintiff instituted this action to establish its prior interest in the plane. In the interim, on January 8, 1969, plaintiff filed with the FAA a "Notice of Aircraft Lien" on a form apparently of its own devising, the paper containing no signature or acknowledgement by the owner.
Preliminarily, to the extent that recording vel non under the federal act of plaintiff's lien affects its position on the merits, we agree with the trial court's conclusion that the recording of that interest by plaintiff, coming after sale by defendant under its security agreement, was too *375 late. But, as will be seen, the absence of a valid filing was not here material.
Plaintiff's lien claim is founded upon N.J.S.A. 2A:44-1 et seq., which grants a possessory lien for sums due for the storage, maintenance, keeping or repair of aircraft or the furnishing of gasoline, accessories, materials and supplies therefor, in favor of persons engaged in the business of supplying such goods or services. N.J.S.A. 2A:44-2. "The lien shall be superior to all other liens, except liens for taxes, and the operator of such aircraft shall be deemed the agent of any owner, mortgagee, conditional vendor or other lienor thereof for the creation of such superior lien." Id.
The lien under the cited statute gains emphatic confirmation from the Uniform Commercial Code. Adopted in New Jersey in 1961, effective in 1963 (L. 1961, c. 120) the immediately pertinent code provision (N.J.S.A. 12A:9-310) reads:[2]
When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise.
Under N.J.S.A. 2A:44-2 and the Code section quoted, taken together, a qualified aircraft mechanic's lienholder having possession would clearly take priority over a security interest perfected under Article 9 of the Code. See New Jersey Study Comment, Note 3, under N.J.S.A. 12A:9-310, p. 472. In other words, apart from the effect of the Federal Aviation Act, plaintiff herein would prevail over defendant under New Jersey law. The here crucial inquiry is *376 whether the recording provisions of the federal act were intended or should be construed to effect a different result.
The present federal statute respecting recordation of titles and security interests in aircraft stems from § 503 of the Civil Aeronautics Act of 1938, 52 Stat. 1006 (1938)  as of then, 49 U.S.C.A. § 523. After first requiring the registration of all certificates of ownership of aircraft by the Civil Aeronautics Administration (now the Federal Aviation Agency) it directed the agency to maintain a system for recording "any conveyance which affects the title to, or any interest in, any civil aircraft of the United States." The statute was superseded in 1958 by the Federal Aviation Act (now 49 U.S.C.A. § 1403). Its recording provisions here material read:
(a) The Administrator shall establish and maintain a system for the recording of each and all of the following:
(1) Any conveyance which affects the title to, or any interest in, any civil aircraft of the United States;

* * * * * * * *
(b) The Administrator shall also record under the system provided for in subsection (a) of this section any release, cancellation, discharge or satisfaction relating to any conveyance or other instrument recorded under said system.
(c) No conveyance or instrument the recording of which is provided for by subsection (a) of this section shall be valid in respect of such aircraft, aircraft engine or engines, propellers, appliances, or spare parts against any person other than the person by whom the conveyance or other instrument is made or given, his heir or devisee, or any person having actual notice thereof, until such conveyance or other instrument is filed for recordation in the office of the Administrator: * * *
(d) Each conveyance or other instrument recorded by means of or under the system provided for in subsection (a) or (b) of this section shall from the time of its filing for recordation be valid as to all persons without further or other recordation * * *.
Under the act the FAA maintains an office in Oklahoma City both for registration of ownership of aircraft (49 U.S.C.A. § 1401) and for recordation (under § 1403) of conveyances of aircraft and of security instruments therein.
Thorough study of the matter convinces us that Congress did not intend by adoption of the cited recordation procedure *377 necessarily to displace and preempt all state law otherwise applicable bearing upon priorities of lien and title interests in aircraft. Rather it was the intent, in relation to aircraft, to substitute for the multiplicity of state registration or recording systems a single preemptive federal system for registering (1) instruments of title, comparable to state registration of titles to motor vehicles, and recording (2) security documents of the kinds commonly comprehended by state recording laws concerning written consensual security interests affecting personal property. The reason was that the ready mobility of aircraft and their common use across state lines made it cumbersome and burdensome for persons having concern with title to or incumbrances on aircraft to have to record or search in all states or localities which could arguably be claimed to constitute the proper recording situs in relation to the specific owner or incumbrancer of a particular aircraft. See Scott, "Liens in Aircraft: Priorities," 25 J. Air L. & Com. 193, 200, 203 (1958); Case Note, 48 Colum. L. Rev. 1248 (1948). Thus, failure to federally record a recordable instrument would entail the specific consequences declared by § 1403(c), but no other. Federal recording would validate a title or incumbrance as against any claim of invalidity based upon absence of state recording, but would not necessarily create affirmative priority as against competing rights declared by applicable state law.
And so, referring to all the provisions of the federal act in entirety, including that declaring immunity to tort claims in the holder of a security interest, Professor Gilmore's authoritative text states:
The several provisions summarized above obviously amount to a good deal more than a recording system (like the patent and copyright provisions) but are still a good deal less than a comprehensive coverage of security interests in aircraft; they are much less comprehensive than the Ship Mortgage Act, which goes into great detail on the formal requisites and priorities of ship mortgages and includes sections on foreclosure and on the status of mortgages on foreign flag ships. There is of course no plenary federal power over air transportation comparable to the patent and copyright powers or *378 even to the extension [sic] of the "judicial power of the United States" to admiralty and maritime cases. Here Congress acts under the interstate commerce and the bankruptcy powers  which have, however, become so extensive that there is not likely to be any constitutional challenge to anything Congress has done or may do in the future. A truly comprehensive security statute for aircraft  or indeed a statute covering security interests in transportation equipment of any kind, by air, rail, road and water  would undoubtedly be within the power of Congress to enact; there is, however, little likelihood that such a federal preemption of the field will take place in the near future. [1 Gilmore, Security Interests in Personal Property, § 13.5, at 423 (1965)]
Further,
Except for the engine and spare parts liens, § 503 is not in any sense a substantive statute. Therefore, it is believed, apart from these substantive provisions, the question of formal requisites, and the operation of the recording system, state law should apply to determine any question arising in connection with a security interest in aircraft. The argument for a federal law solution is even weaker here than under any of the other federal statutes we have so far discussed: § 503 is much less comprehensive than the Ship Mortgage Act and there is not the same federal source of power that could be alleged in favor of a federal solution in the fields of copyright, patent and admiralty law. The cases decided under § 503 all seem to assume that state law is generally applicable and that § 503 is clearly an "interstitial" statute, which goes as far as it goes but no further. [Id., at 426-427]
Striking a similar note is Scott, supra, 25 J. Air L. & Com., at 202, wherein, after discussing the case holding the federal act constitutionally applicable to aircraft used solely in intrastate commerce,[3] the writer says:
Meaning of Section 503 [now § 1403]. Accepting the constitutional validity of the section, we are then faced with the more important question  what priority in right is obtained by a security holder through federal recordation? Clearly it is not axiomatic that recordation assures priority as to subsequent lienors, and the statutory language cannot be construed in such a way as to leave the matter free from doubt. The statute merely provides that conveyances or other instruments filed for recordation" shall be valid as to all persons *379 * * *." It does not speak in positive terms of priority, as does for instance the Ship Mortgage Act of 1920 discussed above.
Most of the decisions having to do with the federal act have been careful to delineate its recording provisions as preemptive and exclusive only in respect of place and requirements of recording and the effect of failure to record a federally recordable conveyance or instrument as to subsequent bona fide purchasers or lienors without notice. Aircraft Investment Corp. v. Pezzani & Reid Equipment Co., 205 F. Supp. 80, 82 (E.D. Mich. 1962); American Aviation v. Aviation Insurance Managers, Inc., 244 Ark. 829, 427 S.W.2d 544, 547 (Sup. Ct. 1968); Blalock v. Brown, 78 Ga. App. 537, 51 S.E.2d 610, 9 A.L.R. 2d 476 (Ct. App. 1949); State Securities Company v. Aviation Enterprises, Inc., 355 F.2d 225, 229, 22 A.L.R. 3d 1263 (10 Cir.1966); Marsden v. Southern Flight Service, Inc., 227 F. Supp. 411, 415 (M.D.N.C. 1961); cf. Lochhead v. G.A.C. Finance Corp. of Camelback, 6 Ariz. App. 539, 434 P.2d 655 (Ct. App. 1968); Curtis v. Carey, 393 S.W.2d 185, 189 (Tex. Ct. Civ. App. 1965).
The decision by our Chancery Division in Smith v. Eastern Airmotive Corp., supra (on which the trial court relied in the instant case), defeating a subsequent New Jersey aircraft mechanic's lien as against a prior federally recorded security agreement solely because of the absence of federal recordation of the former (99 N.J. Super., at 353-354), was based on a line of authority following In re Veterans' Air Express Co., supra (n. 3). There, after a sound holding that the federal act applies to planes used in intrastate as well as interstate flight, the court held a government-owned and federally recorded chattel mortgage to take priority over a subsequent possessory lien of a repairman under a California statute. The opinion did not mention, nor did the result depend upon whether the latter lien was federally recorded, and its rationale is beclouded by allusions to priority of government-owned liens. However, the actual holding on the facts seems partly *380 to depend on an apparent assumption that the federal act is preemptive not alone as to recording requirements but sweepingly as to all substantive title and lien questions pertaining to aircraft. 76 F. Supp., at 688. This approach was pointedly rejected in Aircraft Investment Corp. v. Pezzani & Reid Equipment Co., supra, where Chief Judge Levin said:
Plaintiff suggests that Congress has preempted the entire field of conveyancing of interests in aircraft. This view is erroneous, notwithstanding In re Veterans' Air Express Company, 76 F. Supp. 684 (D.N.J. 1948), which contains dicta on which plaintiff relies. Congress has said only that until an instrument purporting to convey an interest in an aircraft is recorded, in accordance with the Act, it is void as to third parties without notice. Upon federal recordation, it is valid without further recording. [205 F. Supp., at 82].
The court went on to indicate that the holder of a prior federally recorded chattel mortgage on an aircraft might not be prior in lien to the interest of a purchaser from the chattel mortgagor if certain principles of state law precluding that result were found applicable on the facts when the case should be tried. Expressly citing and following the statement in Pezzani & Reid, supra, as to the limited degree of preemption of the federal act, the court in American Aviation v. Aviation Insurance Managers, supra, stated:
It has previously been pointed out that Congress has preempted the field as far as recordation and registration of aircraft is concerned, but we do not mean to say that Congress has preempted the entire field relating to conveyances of aircraft, for it has been held otherwise * * *, [427 S.W.2d, at 547; citing Pezzani & Reid, supra].
See also, State Securities Company v. Aviation Enterprises, Inc., supra (355 F.2d, at 229), emphasizing that the federal act is preemptive only as a recording system and not as to "questions of the validity of * * * title documents, actual notice, good faith purchaser status and the like" which must be resolved under state law.
*381 Squarely assailing both the rationale and holding in Veterans' Air Express, supra, insofar as it subordinated the subsequent artisan's possessory lien to the federally recorded chattel mortgage held by the government, Scott, supra, 25 J. Air L. & Com., at 203, writes:
While the court is undoubtedly correct that Congress may establish the priority of its liens with respect to liens asserted by private individuals under state statutes or by virtue of common law, one may seriously question whether it intended to do so in this instance. The purpose of the statute was reportedly to eliminate confusion engendered by a multitude of state recording systems by providing a single basis for constructive notice, not to establish the priority of a recorded security interest over all subsequent claims. The only situation in which priority appears to be determined by operation of the statute is where the security holder has failed to record his interest. Such failure invalidates the conveyance as to innocent third persons. But recordation itself merely validates; it does not grant priority. Certainly there is much respectable authority in this country preferring the lien of the artisan to that of the antecedent holder of a recorded security, either on a theory of implied consent or agency. There is no indication that Congress intended to overrule such authority by passing section 503. [emphasis added]
There is cogent evidence supporting the view that statutory or common-law possessory liens arising in invitum as a matter of law from the doing of work or furnishing of materials, unaccompanied by the execution by the obligor of any document or instrument, were not intended by the draftsmen of the federal recording act to be affected by it in any way: (1) the statutory language describing the recordable interests; (2) the treatment of the federal act by the drafters of Article 9 of the Uniform Commercial Code.
1. We note, preliminarily, that determination of this particular case requires no definitive holding as to whether a New Jersey aircraft mechanic's lien is recordable under 49 U.S.C.A. § 1403(a). As will be further developed infra, plaintiff's failure to record in this case, assuming the lien was recordable, should not prejudice it vis-a-vis defendant since the requirement of recording is to give *382 notice for the benefit of those who subsequently contemplate taking an interest in the aircraft, and defendant's interest here was taken prior to plaintiff's. However, the statutory description of recordable rights makes it rather dubious that the drafters actually contemplated recordation of such a lien. The operative subparagraph (1) under paragraph (a) of § 1403, in specifying what should be recorded, speaks of "any conveyance * * *." (Emphasis ours). Paragraph (b) provides for the recordation of releases, discharges, etc. "relating to any conveyance or other instrument recorded under said system." (Emphasis ours). Thereafter, uniformly in the remainder of § 1403 after paragraph (b) the references are to "conveyance(s) and (or) other instrument(s)". § 1403(a)(2) calls for the recordation of "any lease, and any mortgage, equipment trust, contract of conditional sale, or other instrument executed for security purposes" covering specifically identified aircraft engines, propellers or other parts.
"Conveyance" is defined in 49 U.S.C.A. § 1301 as "a bill of sale, contract of conditional sale, mortgage, assignment of mortgage, or other instrument affecting title to or interest in, property." (Emphasis ours) See Marrs v. Barbeau, 336 Mass. 416, 146 N.E.2d 353 (Sup. Jud. Ct. 1957), holding that an attachment of a plane is not a recordable "conveyance or other instrument" affecting title to or interest in an aircraft.
Paragraph (g) authorizes administrative regulations to provide for the endorsement upon certificates of registration or aircraft certificates of information in various specified categories. If the paragraph authorizes regulations further particularizing the kinds of recordable instruments, as to which the language is at best ambiguous, there is no such regulation clearly encompassing a lien like plaintiff's. The regulations now in effect (quoted in Smith v. Eastern Airmotive Corp., supra (99 N.J. Super., at 352)) expand the statutory definition of recordable conveyances quoted above to include "lease, equipment trust, notice of tax lien *383 or of other lien * * *." The latter phraseology would seem to contemplate a notice or other written document or instrument at least of a kind regularly employed in the creation or enforcement of a lien, e.g., a tax title certificate. It is, of course, elementary that an administrative regulation must be within the fair contemplation of the delegation of the enabling statute. The statute is confined to "conveyances" and "instruments."
That the act contemplates a written instrument executed by the obligor or grantor is further evident from the fact that former section 503 (now § 1403(e)) required acknowledgement of the instrument as a prerequisite for recording. While the act was amended in 1966 to eliminate the necessity of acknowledgement except as the Administrator might by regulation prescribe, the fact that acknowledgeable instruments were the only type of security or title instrument contemplated for recordation is evidenced not only by the history of the act but also by the present amendatory regulation (§ 49.13(c)) which, while eliminating the need for acknowledgement, nevertheless states: "The law of the place of delivery of the conveyance determines when a conveyance or other instrument must be acknowledged in order to be valid for the purposes of that place."
It hardly needs iteration that the New Jersey aircraft mechanic's lien is not evidenced by any instrument executed by the obligor, thus not one susceptible of acknowledgement by an obligor. There is no requirement in N.J.S.A. 2A:44-1 et seq. under which anyone, lienor or lienee, need sign any paper for the rise or enforcement of the lien (beyond the posting of a notice of sale by the lienor in connection with satisfaction of the lien by sale).[4]
*384 2. We have observed above that the UCC confirms the paramountcy of plaintiff's lien, considered solely as a matter of New Jersey law. N.J.S.A. 12A:9-310. However, the Code also provides in N.J.S.A. 12A:9-104 that Article 9 does not apply, inter alia, "to a security interest subject to any statute of the United States such as the Ship Mortgage Act, 1920, to the extent that such statute governs the rights of parties to and third parties affected by transactions in particular types of property; * * *."
The here pertinent question generated by the foregoing is whether the Code draftsmen contemplated the then Civil Aeronautics Act (in respect of its recordation provisions) as a "statute of the United States" necessarily governing the rights of contesting lienholders of an aircraft, much less those of a mortgagee as against a subsequent mechanic's lienor in an aircraft, for purposes of section 9-104. The Official Code Comment (N.J.S.A. 12A:9-104, at 339) answers that question in the negative. It states that while proposed legislation then pending in Congress covering all aircraft financing would, if enacted, displace Article 9 in that field, the existing provisions of the Civil Aeronautics Act do not necessarily do so. Such legislation was never enacted. The supersession of the recording provisions of the Civil Aeronautics Act by those of the Federal Aviation Act in 1958 involved no changes in substance. See 1 Gilmore, op. cit. § 13.5, at p. 422, n. 1. Thus, the draftsmen of the Code join with Gilmore, Scott and Judge Levin in regarding the federal aircraft recording act as something less than a comprehensive preemptive statute controlling substantive *385 priority rights in aircraft to the exclusion of state law.[5]
Proceeding from the foregoing background, we examine the other cases considering the priority status of mechanic's or artisan's liens on aircraft. A Wisconsin court held, prior to Veterans' Air Express, supra, that a prior federally filed chattel mortgage did not constitute notice to a repairman and thus was subordinated to his lien. Anderson v. Triair Associates, Inc., 1949 U.S. Av. R. 440 (Wisc. C.C. 1947) (not officially reported). While the technical holding was that federal "recording," as distinguished from "filing," took place after commencement of the repairs, and thus did not under the federal act as then constituted confer priority on the mortgagee (at 445), the court thought it inequitable "upon principle" to hold repairmen subject to constructive notice of a distant recording not called for by any state statute when such repairs preserve the value of the property for the benefit of all in interest and are often made under emergency conditions (at 446, 448).
In United States v. United Aircraft Corporation, 80 F. Supp. 52 (D. Conn. 1948), the court held that a federally recorded chattel mortgage did not take precedence over a subsequent artificer's lien on engines of the aircraft overhauled by it, but only because the recordation did not identify the engines with sufficient particularity. Although the implication is that had there been sufficient specificity in description the mortgagee would have prevailed, the court left open the question as to whether the artisan should have prevailed in any case on the ground that it might have been "the intent of the contracting parties to the mortgage that an artisan's lien should have priority * * *" (80 F. Supp., at 55). See the *386 comment on this case in Scott, supra, 25 J. Air L. & Com., at 204.
It is noteworthy that the opinion in the United Aircraft case does not indicate that the artisan recorded its lien with the CAA; yet the court did not undertake to invalidate the lien on that ground, as did the court in the Chancery Division decision of Smith, supra, and the trial court in the present case. Thus, United Aircraft could be argued as authority to the effect that failure of an artificer to record a lien federally (assuming it to be so recordable) does not per se void the lien as to the entirety of competing interests.
In Crescent City Aviation, Inc. v. Beverly Bank, 139 Ind. App. 669, 219 N.E.2d 446 (Ind. App. Ct. 1966), the attempted statutory foreclosure of a mechanic's lien for work and material in repairing an airplane was defeated as against a previously recorded conditional sale contract. Purporting to rely on Veterans' Air Express, supra, the court asserted that the federal act intended to preserve state "remedies" but only for "those who give notice by filing with the Administrator" (219 N.E.2d, at 449). It will be recalled that Veterans' Air Express was not decided on the basis of failure of the (subsequent) artisan to file under the federal act. The Crescent City decision obviously cannot be supported on the "notice" rationale since, as in the instant case, the mechanic's work and lien came after the creation of the competing interest  there, the conditional sale contract. We are not, moreover, apprised whether Indiana law gave priority to the mechanic's lien. Finally, the case is distinguishable in that enforcement of the mechanic's lien involved a foreclosure proceeding and the local filing of an instrument (notice of lien), a factor noted above to be absent as to the statutory lien in the present case.
In Continental Radio Co. v. Continental Bank & Trust Co., 369 S.W.2d 359 (Tex Civ. App. 1963), a prior-in-time constitutional artisan's lien was held subordinate to the chattel mortgage of the defendant bank on the aircraft because the bank took its interest without notice of the lien and there was *387 no constructive notice of the artisan's lien since it was not federally recorded. Although a letter and supporting documents claiming the artisan's lien were dispatched to the FAA for filing, the court without explanation says: "None of these instruments complied with the [federal] statutory requirements for filing" (at 362). While the opinion abounds in dicta reiterating the discredited theory of total substantive federal preemption bottomed on Veterans' Air Express (see supra), the express ratio decidendi of the case is that the Texas constitutional artisan's lien "can only be enforced in equity and no enforcement will lie as against an innocent purchaser," such as the court regarded the mortgagee in that case to be. (at 362). Thus, the case is not authority for such a situation, as here, where the aircraft mechanic's possessory lien is under state law automatically paramount without any recording against any other security interest, past or future.
Finally, defendant cites as a purported artisan-lien precedent the case of International Atlas Services, Inc. v. Twentieth Century Aircraft Co., 251 Cal. App.2d 434, 59 Cal. Rptr. 495 (D. Ct. App. 1967), cert. den. 389 U.S. 1038, 88 S.Ct. 775, 19 L.Ed.2d 827 (1968). At the outset, this case is not actually one involving the priority of an artisan's lien, as such, although the plaintiff was a maintenance aircraft contractor. The interest asserted by it in that case was one of title to engines of its own which it had temporarily bailed to the owner of the aircraft by way of maintenance replacement for worn-out engines it had removed for overhaul. The contest was with the prior-in-time conditional vendor of the new aircraft as an entirety, which had federally recorded its interest. The contract of conditional sale required the buyer to replace worn-out parts, engines, etc., only with other parts, engines, etc. owned by the buyer free and clear of any encumbrances. 49 U.S.C.A. § 1403(a)(2), as noted above, provides for the recordation of any "lease" etc. of any "specifically identified aircraft engine," with the same consequences for failure to record as noted above in case of failure *388 to record a recordable "conveyance." The court held that while, as a matter of California law, the plaintiff would have prevailed in its claim to the engines as against the mortgagee, it forfeited its right "under federal law" because of its failure to record federally what the court held constituted its "leases" of the engines to the owner. The opinion embraced completely and uncritically the "total federal preemption" theory stemming from Veterans' Express Co. and rejected by the leading commentators and by the draftsmen of the UCC, as observed above.
It is notable, moreover, that the plaintiff's interest was represented by an instrument clearly recordable under the federal act. However, the decision does not lend support to any view that priority in federal recording assures priority as to all subsequent interests regardless of state law, since the engine owner would have been accorded priority had it recorded. What is unjustifiable about the decision, however, is its holding of forfeiture of the owner's title interest because of absence of recording in a situation where the prevailing prior-in-time conditional vendor obviously did not take its security interest in reliance upon the absence from record of the then nonexistent leases of the engines. The result can be justified, if at all, only on the theory that subsequent checking of the record by the conditional vendor and prompt filing by the "lessor" could have apprised the former earlier of the breach of the retention-of-title-to-engines provisions of the contract, mentioned above, and enabled earlier remedial action by the vendor against the vendee.
On the other hand, we find decisions holding section 1403 not effective to produce what the court deems a result contra-indicated by local law and policy. The most common example of this is the case of a retail buyer of an aircraft from a dealer in such products where the dealer has previously incumbered the plane with a recorded lien. Whether the buyer fails to record his purchase at all, or buys and records after the recording of the earlier security interest, the buyer consistently prevails against the lienor. Texas *389 National Bank of Houston v. Aufderheide, 235 F. Supp. 599 (E.D. Ark. 1964); Northern Ill. Corp. v. Bishop Distributing Co., 284 F. Supp. 121 (W.D. Mich. 1968); Suburban Trust & Savings Bank v. Campbell, 19 Ohio Misc. 74, 250 N.E.2d 118 (C.P. 1969); cf. Lochhead v. G.A.C. Finance Corp. of Camelback, supra.
In the Aufderheide case the federal court, while recognizing the right of Congress "to legislate in the field of registration of aircraft and to provide for the recordation of liens upon or conveyances of such craft * * *" (235 F. Supp., at 603), nevertheless held that § 1403 had not supplanted the general rule of mortgage law that when a mortgagee consents to the sale of a mortgaged chattel free of lien by the mortgagor, the purchaser takes free of the lien. The court found implied consent on the facts of the case  that the mortgagee bank knew the mortgagor was a dealer in aircraft and that the prior course of dealing between the parties signalled an implied consent by the lienholder to sale to customers of the obligor free of the lien.[6]
The rationale of Northern Ill. Corp., supra., was basically that of Aufderheide, supra, while the other cases cited are influenced by other factors.
This line of cases is a practical exemplification by federal as well as other courts of the limited effect accorded § 1403 where its literal application would frustrate important state policy embodied in local law.
We return to the specific questions here posed for decision. They are:
(1) Assuming plaintiff's lien was a federally recordable one (as to which we have above expressed strong doubt), did the failure so to record it invalidate it as against defendant's security interest?
*390 (2) If question (1) is answered in the negative, does defendant's interest nevertheless prevail over plaintiff's lien, by virtue of § 1403, because of its antecedence in creation and the fact of its recordation?
1. We have intimated our view as to this question above in discussion of Crescent City Aviation, Inc. v. Beverly Bank and International Atlas Services Inc. v. Twentieth Century Aircraft Co., both supra, but explain it more fully here. Everything written about § 1403, whatever the disagreement on other aspects of its interpretation, is concordant in the view that it is essentially a constructive notice device, designed to supplant diverse state recording statutes similarly functioning as means of constructively imputing notice to those subsequently dealing with or in relation to the aircraft. As pithily put in Marsden v. Southern Flight Service, Inc., supra, "The purpose of the recording provisions of the act is to protect persons who have dealt on the faith of recorded title or [sic] aircraft and as to whom it would be a fraud to give effect to unrecorded titles to their detriment." (227 F. Supp., at 415). The legislative history supports this conclusion. Hearings before Committee on Interstate and Foreign Commerce on H.R. 9738, 75th Cong., 3rd Sess., at 405-406 (1938).
In the instant case, recording plaintiff's lien would have obviously afforded no constructive notice to defendant, which had taken its interest previously, could thus not by search of the record before its investment have found plaintiff's lien, even if ultimately recorded, and presumably relied only on the absence from record of any earlier titles or liens. Therefore, to destroy plaintiff's New Jersey statutory lien, reinforced by the weight of Code provision N.J.S.A. 12A:9-310, as against this defendant, would senselessly subvert New Jersey law without the justification of service of the rationale of the federal act. Such a result could be arrived at only by a blindly literal reading of § 1403(c), and ignoring its intent and purpose. This we will not do. Alexander v. New Jersey Power & Light Co., 21 N.J. 373, 378-379 (1956). The case *391 would, of course, be different had defendant's interest followed the creation of the nonrecorded plaintiff's lien (still assuming recordability of the latter). Blalock v. Brown, Marsden v. Southern Flight Service, Inc., and United States v. United Aircraft, all supra, and Pope v. National Aero Finance Co., 236 Cal. App.2d 722, 46 Cal Rptr. 233 (D. Ct. App. 1965).
The holding of the County Court, insofar as based on absence of recording of plaintiff's lien, is erroneous, and the decision in Smith v. Eastern Airmotive Corp., supra, to the same effect is overruled.
2. The answer to this question depends on how one reads the statutory language (§ 1403(d)):
Each conveyance or other instrument recorded * * * under the system provided for in * * * this section shall from the time of its filing for recordation be valid as to all persons without further or other recordation, * * *.
Those of the authorities which have deliberately considered the meaning of this clause have, as fully developed above, concluded that it means no more than what it expressly says: in effect, that recording under the federal act is all the recording necessary to prevent relative invalidity vis-a-vis other interests. The section does not say that such recording per se grants priority as against any other interest. For example, it obviously would not ordinarily grant priority against an earlier, federally-recorded interest. Its priority, ordinarily, against later interests, recorded or unrecorded, is consistent with state law which, absent the federal requirement, would generally accord priority to the earlier of two recorded interests (where recording is required by state law). To restate the teaching of Gilmore,
* * * apart from [certain substantive provisions not here relevant], the question of formal requisites, and the operation of the recording system [under § 1403], state law should apply to determine any question arising in connection with a security interest in aircraft. [1 Gilmore, op. cit., at 426].
*392 Accordingly, as applied to the instant facts the recording of defendant's lien does not per se confer priority in interest as against that of plaintiff. The inquiry is remitted to state substantive law, and the latter gives priority to plaintiff's lien.[7]
To recapitulate: we hold that (1) plaintiff's failure to record its lien (assuming federal recordability) does not invalidate it as against defendant; (2) federal recording of defendant's lien did not accord it priority over plaintiff's, and (3) the relative priorities of the parties must be determined in accordance with state law, which, on the present facts, accords priority to plaintiff's aircraft mechanic's possessory lien to the extent noted above.
In a supplemental post-argument brief defendant for the first time argues that if federal law does not here control on priority, the law of New York rather than that of New Jersey applies.
The note and security agreement were mailed for signature from the bank's office in Secaucus, New Jersey, to the owners in New York City and signed there by them. The copy of the security agreement furnished us is blank as to place of execution by the bank, but it was inferably signed by the bank officers at Secaucus. The security agreement recites that the plane is to be kept at Bader Field in Atlantic County, New Jersey, and plaintiff's goods and services were supplied there. Not only was New York law not pleaded or established below, see Evidence Rule 9(2)(a), (3); cf. Graulich Caterer, Inc. v. Hans Holterbosch, Inc., 101 N.J. Super. 61, 67 (App. Div. 1968), and thus not a factor considered in the trial court's decision, but the present supplemental brief *393 contains no expository argument either supporting the thesis of applicability of New York law in these circumstances or indicating what such law is,[8] if materially contrary in effect to New Jersey law. At trial level, in the original briefs and at the oral argument the issue was debated solely in terms of construction of the federal and New Jersey statutes. In all these circumstances, we ignore the belated argument and assume the applicability of New Jersey law.
The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion. No costs.
KOLOVSKY, J.A.D., (concurring):
Since as the foregoing opinion notes,
determination of this particular case requires no definitive holding as to whether a New Jersey aircraft mechanic's lien is recordable under 49 U.S.C.A. § 1403(a),
in my opinion this court should refrain from expressing any views as to whether under a proper interpretation of the federal statute and such valid regulations as may have been promulgated by the Federal Aviation Agency, such a lien is legally recordable. In fact and in practice, the Federal Aviation Agency has recorded notices of aircraft mechanics' liens  witness the recording of plaintiff's "notice of aircraft lien" on January 8, 1969 as "Conveyance Number P 50993," the recording referred to in the foregoing opinion.
The question of whether an aircraft mechanic's lien is federally recordable is one that should be left for decision to a case in which constructive notice may be a material issue, one involving competing claims between an aircraft mechanic's lien claimant and a person who has purchased the aircraft or acquired a subsequent interest therein without *394 actual notice of an existing unrecorded mechanic's lien claim. Constructive notice is of no significance in the case before us which involves a controversy between the holders of a security interest and an aircraft mechanic claiming a lien for services rendered after the security agreement was executed and recorded.
NOTES
[1] Plaintiff also claims $4,076.44 for "pilot service" and $1,530 for "trade" (unexplained). The trial court held these items were not lienable under the New Jersey statute cited above. We agree as to the first. The "trade" item will have to be explained and readjudicated on the remand. If it consists, as defendant asserts, of trade balance of rentals as between this plane and others furnished the owner by plaintiff, it is not lienable.
[2] See also N.J.S.A. 12A:9-104(c), which excludes the application of Chapter 9 of the Code "to a lien given by statute or other rule of law for services or materials except as provided in 12A:9-310 on priority of such liens."
[3] In re Veterans' Air Express Co., 76 F. Supp. 684, 691 (D.N.J. 1948).
[4] One may well wonder how an aircraft mechanic's lienholder in New Jersey could effectively file under the federal act in relation to later lienors. Repair and maintenance obligations are ordinarily incurred over a period of time, but the New Jersey lien is only for such as have actually been incurred at any given time. Would a federal filing, if required at all, made by the mechanic when the work began, protect him against intervening liens as to work done later? Would he have to make repeated filings as the work proceeded? Consider that "notice filing," as distinguished from "transaction filing," was hardly known in 1938 when the federal act was first enacted (see Official Code Comment, N.J.S.A. 12A:9-402, at 522-523). Of course, as seen, neither notice filing nor transaction filing has ever had any relevancy to the statutory aircraft mechanic's lien as a matter of New Jersey law.
[5] The foregoing observation is not affected by the circumstance that N.J.S.A. 12A:9-302(3) exempts from the filing requirements of Article 9 any security interest subject to filing under a federal statute like 49 U.S.C.A. 1403. See New Jersey study comment 3. Thus, defendant's mortgage did not have to be filed under Article 9.
[6] The court noted that this conclusion was "consistent" with UCC 9-307 (N.J.S.A. 12A:9-307) to the effect that a buyer in the ordinary course of business (other than of farm products) takes free of a security interest created by his seller, even though known to the buyer and perfected. (235 F. Supp., at 604).
[7] While N.J.S.A. 2A:44-1 et seq. and the Code settle for us the public policy question here implicated, justification for the legal implication of authority by the prior lienor for incurrence of subsequent lienable services on the chattel by the owner is indicated by Brown, Law of Personal Property (1936) § 112, p. 484. Other justifications for the result are suggested by Scott, supra, 25 J. Air L. & Com., at 208-11.
[8] Our own investigation discloses 32 McKinney's Cons. L. Ann., (New York) Lien Law, § 184, which appears, prima facie, to create a lien on aircraft and other vehicles of substantially similar nature and priority to that under N.J.S.A. 2A:44-1 et seq.