**INDUSTRIAL NATIONAL BANK OF RHODE ISLAND, Plaintiff,**

v.

**BUTLER AVIATION INTERNATIONAL, INC., Defendant.**

**No. 73 C 1629.**

United States District Court, E. D. New York.

Jan. 28, 1974.

---

Alvin Chriss, New York City, for plaintiff.

Hofheimer, Gartlir, Gottlieb & Gross by Sylvia D. Garland, New York City, for defendant.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiff, a Rhode Island bank, sues in replevin to recover possession of a

DC–7C airplane stored at defendant's aviation facilities at La Guardia Airport, Queens. Jurisdiction is grounded on 28 U.S.C. §§ 1331 and 1332. Defendant having declined to release the aircraft to plaintiff until its storage charges are paid, the matter is now before the court on plaintiff's application for an order of replevin pursuant to N. Y. CPLR § 7102(a) McKinney's Consol. Laws, c. 308 and Rule 64, F.R.Civ.P.

Plaintiff requests that a United States Marshal be directed to seize the aircraft and turn. it over to plaintiff upon the furnishing of an undertaking "equal to twice the value of defendant's charges." That request brings sharply into focus the pivotal question—apparently of first impression in this Circuit —whether a bailee's possessory lien under New York law must give way to a prior federally recorded security interest which assertedly has ripened into a right to take possession of the airplane.

While the parties are in conflict over their legal rights, there is no real dispute as to the material facts. In April 1970 plaintiff made a loan of $79,749.60 to an Ohio corporation, Tortugas of Ohio, Inc. (Tortugas), repayable in monthly installments over a five-year period. Tortugas was then the owner of the DC–7C airplane here involved and had registered that ownership with the Federal Aviation Administration (FAA) sometime in 1970. To secure the loan, Tortugas executed a security agreement note and an aircraft security agreement with plaintiff, which the latter duly recorded with the FAA on May 27, 1970, in compliance with 49 U.S.C. § 1403 (1970).[1]

---

1. 49 U.S.C. § 1403 provides in pertinent part that:

"(a) The Administrator shall establish and maintain a system for the recording of each and all of the following:

"(1) Any conveyance which affects the title to, or any interest in, any civil aircraft of the United States;

\* \* \* \* \*

"(d) Each conveyance or other instrument recorded by means of or under the system

provided for in subsection (a) or (b) of this section shall from the time of its filing for recordation be valid as to all persons without further or other recordation. . . ."

14 CFR § 49.31 provides in pertinent part that pursuant to 49 U.S.C. § 1403 mortgages relating to aircraft shall be recorded by the Federal Aviation Administration.

Tortugas subsequently defaulted on the loan and owes plaintiff nearly $30,000. Invoking rights under the security agreement, plaintiff directed Tortugas to make the airplane available and it is claimed Tortugas "has turned over possession of the aircraft to" plaintiff (Pl. Aff., para. 17). At that time the plane was apparently parked at defendant's La Guardia facility, having been left there since May 1972, when Tortugas' lessee of the aircraft abandoned its lease. The plane has there remained while unpaid parking and related charges have been accruing at the rate of approximately $600 a month and now total over $11,000, for which defendant claims a bailee's possessory lien pursuant to N.Y. Lien Law § 184 (McKinney's Consol.Laws, c. 38, 1966).[2] There is no question that the lien has not been recorded with the FAA.

In urging its right to replevy the airplane without paying defendant's charges, plaintiff primarily contends that any state-created lien rights of defendant are invalid and subordinate to plaintiff's prior federally recorded security interest. Secondarily, plaintiff argues that in any event under the applicable New York replevin statutes, N. Y. CPLR § 7102 and § 7103(a), defend-

ant may not object to replevin if plaintiff posts an undertaking equal to twice the value of defendant's charges. This, it contends, is all the protection defendant is entitled to and it accords with the equities in that (a) defendant's charges are assured; (b) no further charges are incurred; (c) defendant will suffer no further expenses; and (d) the airplane will not further depreciate in value and plaintiff will realize the highest possible collateral value to apply to its loan.

Defendant is quick to point out the illusory nature of the "protection" afforded by an undertaking in lieu of possession. Once defendant relinquishes "actual possession" of the airplane, there can be no doubt that "the lien provided for in this section shall thereupon become void as against all security interests, whether or not perfected. . . ." N.Y. Lien Law § 184, n. 2 *supra*. Such a clear expression of legislative intent leaves little room for the suggestion that *payment* of defendant's charges is assured by an undertaking and can safely await determination of the "ultimate issue . . . [of] whether Industrial or Butler has the better right to possession" (Plaintiff's Memorandum of Law, p. 10).[3]

2. That statute provides in pertinent part:

"§ 184. *Lien of bailee of motor vehicles, motor cycles, motor boats or aircraft*

"A person keeping a . . . hangar or place for the storage, maintenance, keeping or repair of . . . aircraft as defined by article fourteen of the general business law, and who in connection therewith stores, maintains, keeps or repairs any . . . aircraft or furnishes gasoline or other supplies therefor at the request or with the consent of the owner, whether or not such . . . aircraft is subject to a security interest, has a lien upon such . . . aircraft for the sum due for such storing, maintaining, keeping or repairing of such . . . aircraft or for furnishing gasoline or other supplies therefor and may detain such . . . aircraft at any time it may be lawfully in his possession until such sum is paid, except that if the lienor, subsequent to thirty days from the accrual of such lien, allows the . . . aircraft out of his actual pos-

session the lien provided for in this section shall thereupon become void as against all security interests, whether or not perfected, in such . . . aircraft and executed prior to the accrual of such lien, notwithstanding possession of such . . . aircraft is thereafter acquired by such lienor."

3. Indeed it is manifest that plaintiff does not expect an undertaking in any amount (the statutory requirement calls for twice the value of the plane, N.Y. CPLR § 7102(e)) to guarantee *payment* of defendant's charges, which do not appear to be in dispute. An undertaking simply guards against a "wrongful" replevin. Plaintiff frankly admits that it seeks replevin in order to remove the airplane to New Hampshire, where parking charges are only $50 a month, and there dispose of it and apply the proceeds to the unpaid balance of plaintiff's loan, while it litigates its priority over defendant. Plaintiff assumes that if it wins that contest, the undertaking will be discharged

An even more cogent reason for not postponing determination of the ultimate legal issue is the essential replevin requirement that defendant's possession be shown to be "wrongfully held", N.Y. CPLR § 7102(c)(2). There appears to be no question that defendant stored and serviced the plane in good faith in the regular course of its business. Certainly Tortugas, as original owner, could not have regained possession without paying the accrued charges or otherwise securing defendant. A refusal by defendant to release the plane to Tortguas unless so paid or secured could hardly be considered wrongful. N.Y. Lien Law § 184. Under the New York statute, plaintiff, as holder of even a perfected security interest, is surely in no better position —unless it is correct in its primary contention that federal recording gives it supremacy. To that pivotal issue we now turn.

In asserting its right to possession, plaintiff's position in essence is that federal law, 49 U.S.C. § 1403, has preempted the field of aircraft liens and titles and that plaintiff's duly recorded security interest is entitled to priority over a state-created possessory lien, such as defendant's, which has not been recorded in compliance with the federal statute and FAA regulations thereunder. Extensive authority has been cited for these propositions.[4]

Against plaintiff's array of authorities defendant resolutely maintains that it was not obliged to record its possessory lien federally and that the lien prevails as against plaintiff's security interest even though it be of antecedent creation. For those propositions defendant relies principally, if not entirely, on the solitary case of Southern Jersey Airways, Inc. v. National Bank of Secaucus, 108 N.J.Super. 369, 261 A.2d 399 (App. Div.1970), a case which overruled, in relevant part, Smith v. Eastern Airmo-

---

without any need for paying plaintiff's charges. It estimates the value of the airplane as at most the balance due, i. e., $29,984.98. Pl. Aff., paras. 18, 19. This, of course, would leave defendant with nothing but an unpaid claim against Tortugas or its absconding lessee.

4. In re Veterans' Air Express Co., 76 F. Supp. 684, 688 (D.N.J.1948) ("Congress has prescribed the only way in which . . . liens upon aircraft may be duly recorded.") ; International Atlas Services, Inc. v. Twentieth Century Aircraft Company, 251 Cal.App.2d 434, 440, 59 Cal.Rptr. 495, 498 (1967) (describing the federal recordation law as "a complete and comprehensive system of recordation which necessarily supersedes inconsistent state law") ; Crescent City Aviation, Inc. v. Beverly Bank, 139 Ind.App. 669, 219 N.E.2d 446, 449 (1966) ("any lien affecting aircraft will not be effective against the property of third persons without knowledge unless and until the lien is [federally] recorded") ; Smith v. Eastern Airmotive Corp., 99 N.J.Super. 340, 353, 240 A.2d 17, 23, 25 (Ch.1968) (so holding, citing "Congress' preemption of the field of aircraft liens and titles, and its policy requiring centralized recordation of interests in aircraft," and the fact that aircraft repairman's liens for labor and materials furnished may and have been federally recorded) ; Continental Radio Company v.

Continental Bank & Trust Company, 369 S. W.2d 359, 362 (Tex.Civ.App.1963) ("Congress clearly undertook to pre-empt the field of conveyancing of interests in aircraft and portions thereof to facilitate the control and promotion of air commerce . . . . Congress has prescribed the only way in which . . . liens upon aircraft may be duly recorded. The [federal] statute voids as to third parties without actual notice . . . liens which are not duly recorded."). See Annot., 22 A.L.R.3d 1270 at §§ 5, 15 (1968).
The total federal preemption view has also been endorsed more generally in United States v. United Aircraft Corporation, 80 F.Supp. 52, 54 (D.Conn.1948) ; State Securities Company v. Aviation Enterprises, Inc., 355 F.2d 225, 229 (10 Cir. 1966) ; Dowell v. Beech Acceptance Corporation, Inc., 3 Cal.3d 544, 91 Cal.Rptr. 1, 476 P.2d 401, cert. denied, 404 U.S. 823, 92 S.Ct. 45, 30 L.Ed.2d 50 (1971). See Annot., 22 A.L.R.3d 1270 at § 3 (1968).
Other courts in different situations from the case at bar have given only limited effect to the federal law where the result would otherwise frustrate important state policy and law. Texas National Bank of Houston v. Aufderheide, 235 F.Supp. 599 (E.D.Ark. 1964) ; Northern Illinois Corporation v. Bishop Distributing Company, 284 F.Supp. 121 (W.D.Mich.1968).

# 1016

tive Corp., n. 4, *supra*. 261 A.2d at 411.[5]

After careful review of the cited authorities, the statute, 49 U.S.C. § 1403, and the relevant implementing regulations, 14 C.F.R. § 49.31 (1973), the court concludes that despite its lack of widespread support, defendant's view is the better one, and must prevail in this case. Contrary to plaintiff's characterization, the *Southern Jersey* case, *supra*, is clearly not an isolated "maverick" opinion which flies in the face of settled law. The Appellate Division of the New Jersey Superior Court has provided in a virtually identical case a thoughtful, exhaustive, and, ultimately, persuasive analysis of exactly the question presented here.

In the *Southern Jersey* case, as here, a bank (there the defendant) had loaned money and had taken as collateral a "security agreement" covering an airplane. This was duly recorded with the FAA. Thereafter the borrower-owner stored and had the plane serviced at the plaintiff's aircraft hangar in New Jersey. The owner subsequently defaulted on the loan and the bank appointed a bailiff to take possession of the plane. The bailiff conducted a public sale and the bank purchased the plane as highest bidder. Plaintiff, having physically retained possession at all times, refused to surrender possession of the plane until its charges were paid, relying upon its statutory aircraft mechanic's lien, N.J.Stat.Annot. 2A:44–1, et seq. After filing its own "Notice of Aircraft Lien" with the FAA, the plaintiff brought a declaratory

judgment action. The New Jersey county court ruled the bank's lien had priority and awarded it possession, relying upon Smith v. Eastern Airmotive Corp., *supra*. The Appellate Division reversed, overruling the *Smith* case and holding that the plaintiff's possessory lien had priority over the bank's prior federally recorded security interest.[6]

The appellate holding in *Southern Jersey*, in this court's opinion, correctly recognizes

that Congress did not intend by adoption of the cited [federal] recordation procedure necessarily to displace and preempt all state law otherwise applicable bearing upon priorities of lien and title interests in aircraft. Rather was it the intent, in relation to aircraft, to substitute for the multiplicity of state registration or recording systems a single preemptive federal system for registering (1) instruments of title, comparable to state registration of titles to motor vehicles, and recording (2) security documents of the kinds commonly comprehended by state recording laws concerning written consensual security interests affecting personal property. The reason was that the ready mobility of aircraft and their common use across state lines made it cumbersome and burdensome for persons having concern with title to or incumbrances on aircraft to have to record or search in all states or localities which could arguably be claimed to constitute the proper recording situs in relation to the specific owner or incumbrancer of

---

5. Butler also appears to rely on cases which have construed the purpose of the federal recording provisions more narrowly "to protect persons who have dealt on the faith of recorded title or [sic] aircraft and as to whom it would be a fraud to give effect to unrecorded titles to their detriment," Marsden v. Southern Flight Service, Inc., 227 F. Supp. 411, 415 (D.N.C.1961). See Aircraft Investment Corporation v. Pezzani & Reid Equipment Company, 205 F.Supp. 80, 82 (E.D.Mich.1962).

6. In this case, plaintiff's attempt to distinguish *Southern Jersey* is futile. Here, the

application for provisional replevin relief, as demonstrated above, squarely raises the same ultimate legal issues surrounding the right to possession. And the attempted FAA filing by the hangar operator was regarded as immaterial to the court's decision. 261 A.2d at 402. Nor could there be any significant difference between the New Jersey and New York possessory lien statutes as respects priority over prior recorded security interests, since they are both governed by Article 9 of the Uniform Commercial Code (UCC), adopted by each State.

a particular aircraft. [Citations omitted.] Thus, failure to federally record a recordable instrument would entail the specific consequences declared by § 1403(c), but no other. Federal recording would validate a title or incumbrance as against any claim of invalidity based upon absence of state recording, but would not necessarily create affirmative priority as against competing rights declared by applicable state law.[7]

■ As the New Jersey court noted, an aircraft mechanic's lien under the law of that State "is not evidenced by any instrument executed by the obligor . . . ." 261 A.2d at 407. The New York bailee's lien is precisely the same. It is a possessory right created by and solely dependent upon law, not the agreement of the parties. No interest in personal property is *conveyed* and the lien can hardly be said to affect *title* as distinguished from possession. As the New Jersey court wondered, how could such a lien ever lend itself to the filing procedures of the FAA? "Repair and maintenance obligations are ordinarily incurred over a period of time, but the New Jersey [and New York] lien is only for such as have actually been incurred at any given time. Would a federal filing, if required at all, made by the mechanic when the work began, protect him against intervening liens as to work done later? Would he have to make repeated filings as the work proceeded?" 261 A.2d at 407 n. 4.

■■ Although the foregoing practical problems appear insurmountable, Congress undoubtedly could have decreed total federal preemption in this area. In re Veterans' Air Express Co., Inc., *supra* n. 4, and United States v. United Aircraft Corp., *supra* n. 4. But this court, like the New Jersey court, is unable to discern any basis in presently enacted federal law for concluding that federal recording gives this plaintiff's security interest priority over defendant's otherwise valid statutory possessory lien. While In re Veterans' Air Express Co., Inc., *supra* n. 4, appears to be a holding to the contrary, a close reading of the opinion reveals that the court was far more concerned with resolving the question of whether Congress had the *power* to totally preempt the field of aircraft title and lien recordation than the extent to which Congress had in fact exercised the power by the statute in question. That Congress has such power is not challenged. But the further conclusion in that case that Congress intended to subject state-created liens of the type here involved to federal recording requirements is simply not borne out by the language of § 1403 (or its ancestors) or its legislative history. As one commentator has noted, "recordation itself merely validates; it does not grant priority." See *Scott, supra* n. 7. Indeed, it seems inconceivable that Congress could have intended to impede the ability of proprietors of essential aviation facilities to collect their legitimate charges for servicing aircraft, when the overall Congressional purpose was to promote the development and safety of civil aviation.[8]

Focusing, then, on the priority issue, there is little doubt, and it does not ap-

---

7. 261 A.2d at 403–404. The testimony at hearings on H.R. 9738 before the House Comm. on Interstate and Foreign Commerce, 75th Cong., 3d Sess. 405–407 (1938), strongly supports the view that the principal concern of the legislation was to establish a central clearing house to act as a title recording agency "to eliminate confusion engendered by a multitude of state recording systems." See Scott, "Liens in Aircraft: Priorities," 25 J. Air L. & Com., 193, 203 (1958), quoted at 261 A.2d 406, *supra*.

Moreover, the enacted statutory language has not changed in substance during the ensuing years, including the transformation of the Civil Aeronautics Act of 1938 into the Federal Aviation Act of 1958.

8. H.R.Rep. No. 2360, 85th Cong., 2d Sess. (1958), 2 U.S.Code Cong. & Ad.News p. 3741 (1958). See the Official Comment to § 9–104 of the UCC (Comment 1, relating to § 9–104(a)).

pear to be disputed here, that under State substantive law, N.Y. UCC § 9–104(c) and § 9–310, McKinney's Consol. Laws, c. 553, defendant's unrecorded possessory lien under N.Y. Lien Law § 184 has priority over a "perfected security interest." The result is that defendant will remain in possession of the airplane until its charges have been paid.

In so holding, the court is not unmindful that plaintiff's efforts to obtain replevin were due to mounting storage charges at the La Guardia facility, which plaintiff asserts could be cut from $600.00 to $50.00 per month by release and transfer of the aircraft to a New Hampshire facility. Plaintiff is also concerned that winter air temperatures will render it difficult if not impossible to fly this aging plane, making transfer before spring impossible.

Nevertheless, the conclusion that defendants possessory lien must prevail is compelling and inevitable. Clearly, plaintiff ought not to be allowed to defeat a possessory lien that the original owner of the plane, Tortugas, could not have defeated, simply by succeding to the latter's interests in the plane. It hardly bears mentioning that if in fact plaintiff has, by virtue of its agreement with Tortugas and the latter's subsequent default, succeeded in converting its security interest into virtual ownership of the plane, it can pay defendant's accrued charges and move the plane, obviating these practical problems. N.Y. Lien Law § 203 (McKinney 1966).

While the views expressed here may be taken as dispositive of the claims made by plaintiff it its complaint, the only question properly before this court for decision at this time is whether or not plaintiff is entitled to an order of seizure pursuant to § 7102(a) of the CPLR. Finding no legal or factual basis for the validity of plaintiff's claim that the plane is wrongfully held by defendant, there is no ground for issuing such an order, and plaintiff's application must be and hereby is denied.

So ordered.